DEPARTMENT OF HEALTH,
Petitioner

v.

OFFICE OF OPEN RECORDS,
Respondent.

Commonwealth Court of Pennsylvania.

Argued June 21, 2010.

Decided Sept. 9, 2010.

at 65a.)

Roberto T. Datorre, Asst. Counsel, Harrisburg, for petitioner.

Nathanael J. Byerly, Harrisburg, for respondent.

BEFORE: COHN JUBELIRER, Judge, and BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

The Department of Health (Department) petitions for review of the final determination of the Office of Open Records (OOR) that granted HCR–ManorCare's (Requester) appeal from the decision of the Department's Agency Open Records Officer (AORO) denying Requestor's request to obtain certain documents, including notes, witness statements and other materials, relating to governmentally mandated inspections and surveys conducted by the Department on a nursing home (Request) pursuant to the Right–to–Know Law (RTKL).[1] Before this Court, the Department contends that the OOR erred in concluding that the documents requested are not exempt from public disclosure under the noncriminal investigation exemption set forth in Section 708(b)(17) of the RTKL, 65 P.S. § 67.708(b)(17), and the internal, predecisional deliberative records exemption set forth in Section 708(b)(10)(i)(A) of the RTKL, 65 P.S. § 67.708(b)(10)(i)(A).[2] The Pennsylvania Association of County Affiliated Homes,

---

**1.** Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

**2.** The OOR filed briefs and presented oral argument in opposition to the Department's Petition for Review and in defense of the OOR's final determination. During oral argument, the Department's counsel acknowledged this Court's recent opinion in *East Stroudsburg University Foundation v. Office of Open Records*, 995 A.2d 496, 507 (Pa.Cmwlth. 2010) (en banc), in which this Court, responding to a challenge to the OOR's standing in that matter, ruled that the OOR does not have standing to participate in appeals from its decisions and granted a request to quash the OOR's brief. However, the Department's counsel indicated that, because the briefs in this case were filed before *East Stroudsburg* was decided and the Requester did not intervene here, the Department does not object to the OOR's participation in this matter.

Pelican Insurance, Pennsylvania Health Care Association, Pennsylvania Association of Non–Profit Homes for the Aging, and The Hospital & Healthsystem Association of Pennsylvania (collectively, Amici Curiae) have filed a brief expressing their support for the Department's position. For the reasons that follow, we reverse the OOR's final determination.

## I. Facts and Procedural Posture

### A. Requester

Requester is a nursing and rehabilitation center that provides skilled nursing, rehabilitation, sub-acute, Alzheimer's, and dementia care. As a health care facility, Requester is required to be licensed and is subject to licensing inspections. *See* Sections 807, 808, and 813 of the Health Care Facilities Act (HCFA),[3] 35 P.S. §§ 448.807–448.808, 448.813 (requiring licensure of health care facilities and allowing for entry and inspection of such facilities). Requester is also a Medicare provider. As a Medicare provider, Requester is required to be certified and is subject to certification surveys. *See* Section 1819(g) of the Social Security Act, 42 U.S.C. § 1395i–3(g) (requiring certification of compliance with requirements, based on the completion of a survey, for a skilled nursing facility to participate in the Medicare program).

### B. The Department

The Department is the entity responsible for issuing licenses to health care facilities. *See* 35 P.S. § 448.808 (making the Department responsible for the issuance of licenses). As such, the Department is au-

thorized to conduct inspections of health care facilities in order to enforce licensing requirements and applicable state and federal laws and regulations (Inspections). *See* 35 P.S. § 448.813 (authorizing the Department to conduct inspections of health care facilities). Specifically, Section 813 of the HCFA authorizes the Department to: "enter, visit and inspect the building, grounds, equipment and supplies of any health care facility licensed or requiring a license"; "have full and free access to the records of the facility and to the patients and employees therein"; and "have full opportunity to interview, inspect, and examine such patients and employees." 35 P.S. § 448.813. Additionally, the Department is authorized to: cite health care facilities for any deficiencies that are found during an Inspection, Section 814 of the HCFA, 35 P.S. § 448.814; take adverse licensing action against health care facilities, Sections 811 and 812 of the HCFA, 35 P.S. §§ 448.811–448.812; impose civil penalties against health care facilities, Section 817(b) of the HCFA, 35 P.S. § 448.817(b); and maintain civil actions against health care facilities for injunctive or other necessary relief, Section 817(a) of the HCFA, 35 P.S. § 448.817(a).

The Department also serves as the "State Survey Agency" for the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services (HHS) and the Pennsylvania Department of Public Welfare (DPW). As such, the Department is responsible for conducting surveys to monitor compliance with Medicare and Medical Assistance (MA) certification requirements (Surveys).[4]

---

**3.** Act of July 19, 1979, P.L. 130, added by Section 7 of the Act of July 12, 1980, P.L. 655, *as amended*, 35 P.S. §§ 448.807–448.808, 448.813.

**4.** The Department, where possible, is required to combine its licensing Inspections and the Medicare and MA certification Surveys. Sections 804(b), 809(c), and 902(c) of the HCFA, 35 P.S. §§ 448.804(b), 448.809(c), 448.902(c).

, [5] *See* Section 1864(a) of the Social Security Act, 42 U.S.C. § 1395aa (directing that agreements be made, where possible, with state agencies to monitor compliance with certification requirements for participation in Medicare and Medicaid Programs); Section 1902 of the Social Security Act, 42 U.S.C. § 1396a(a)(9)(A) (requiring that the state agency used with regard to Section 1864(a) of the Social Security Act be used in monitoring compliance with requirements for state medical assistance programs); 42 C.F.R. §§ 488.10–488.26, 488.300–488.335 (discussing functions of state survey agencies and procedures to be used in determining compliance). The Survey process, as it applies to nursing homes, is designed "to assess whether the quality of care, as intended by the law and regulations, and as needed by the resident, is actually being provided." 42 C.F.R. § 488.110. The Surveys are required to "be conducted by a multidisciplinary team of professionals, which must include a registered nurse." 42 C.F.R. § 488.314. During the Survey process, the Survey team: (1) conducts an entrance conference, which entails meeting with facility staff to explain the Survey process and gather preliminary information; (2) selects a resident sample; (3) tours the facility; (4) reviews medical records of residents within the resident sample and observes and interviews those residents, as well as family members and staff; (5) makes a drug pass observation, which involves observing the preparation and administration of medications to residents; (6) makes a dining area and eating assistance observation in order to determine if dietary needs are being met; (7) collaborates with each other to discuss findings and make determinations as to deficiencies, analyzes the severity and frequency of any deficiencies, and prepares a Statement of Deficiencies; and (8) conducts an exit conference with the facility staff to explain its findings and to arrange for the preparation of a Plan of Correction. 42 C.F.R. § 488.110. While completing these tasks, the Survey team uses various worksheets to take notes and collect and record relevant information. *Id.* The Survey team also uses a Survey Report Form to summarize all of the negative findings of the Survey, "which could possibly contribute to a determination that the facility is deficient in a certain area." *Id.*

## C. The Request

On January 30, 2009, Requester filed its Request with the Department. Requester specifically sought to obtain copies of:

Documents possessed by the [Department] related to any [Department] sur-

---

5. The Department is responsible for conducting several types of surveys. First, the Department is responsible for conducting the standard Surveys described in the text on a regular basis. 42 C.F.R. § 488.308(a). The Department must conduct "a standard survey of each SNF [Skilled Nursing Facility] and NF [Nursing Facility] not later than 15 months after the last day of the previous standard survey." *Id.* The Department is also responsible for conducting special surveys, which may be undertaken to determine whether certain changes have caused a decrease in quality of care and to investigate complaints or allegations of noncompliance. 42 C.F.R. § 488.308(e). These special surveys can either be conducted as a full standard survey or an abbreviated survey. *Id.* The Department is also responsible for conducting validation surveys to determine the validity of the accreditation process, and validation surveys may be conducted in response to "substantial allegations of noncompliance." 42 C.F.R. § 488.7(a). During a validation survey that is based on substantial allegations of noncompliance, the Department will survey for any condition or conditions that HHS deems related to the allegations made. 42 C.F.R. § 488.7(a)(2). If it is determined that there is a lack of compliance with the condition or conditions, a full Medicare survey by the Department will follow. 42 C.F.R. § 488.7(a)(3).

veys and/or inspections [that the Department] conducted during 2006, 2007, and 2008 of [Requester's] nursing home at 14 Lincoln Avenue, Yeadon, Pennsylvania, including (but not limited to) surveyor's notes, witness statements, and other materials related to the [Department]'s issuance of a Statement of Deficiencies (e.g., CMS Form 2567).

(Request, R.R. at 2a.)

### D. AORO's Decision

On February 3, 2009, the AORO issued a letter denying the Request, asserting, among other reasons, that the records sought: (1) are exempt from public disclosure under the noncriminal investigation exemption set forth in Section 708(b)(17) of the RTKL; and (2) are exempt from public disclosure under the internal, predecisional deliberative records exemption set forth in Section 708(b)(10)(i)(A) of the RTKL.[6] (Letter from AORO, Patty Sheaffer, to Requester's Counsel (February 3, 2009) at 1–2, R.R. at 3a–4a.) The AORO also: advised Requester that the Statements of Deficiencies and Plans of Correction from all of the Inspections and Surveys are made available on the Department's web-

site; encouraged Requester to review those documents; and invited Requester to request copies of those documents, explaining that Requester had a right to access those documents outside of the RTKL. (Letter from AORO, Patty Sheaffer, to Requester's Counsel (February 3, 2009) at 3–4, R.R. at 5a–6a.) Requester appealed the AORO's decision to the OOR.

### E. OOR's Final Determination

On May 6, 2009, without holding a hearing on the matter, the OOR issued its final determination granting Requester's appeal and directing the Department to provide Requester with copies of the requested records with any nonpublic information redacted. In its final determination, the OOR rejected the Department's position that the records sought were exempt from public disclosure under the noncriminal investigation exemption, explaining, in pertinent part:

> The OOR notes at the outset that Section 708(b)(17) (noncriminal investigations) has the potential to be the exception that swallows the rule embodied in the RTKL. The OOR notes that the RTKL provides a strong presumption of

---

6. The AORO also denied the Request, asserting that the requested documents: "include medical records that contain individually identifiable health information" and are, thus, exempt from public disclosure under Section 708(b)(5) of the RTKL, 65 P.S. § 67.708(b)(5); include information that "if disclosed, 'would be reasonably likely to result in substantial and demonstrable risk of harm to or the personal security' of the nursing home residents, family members, and employees identified in those records and are therefore exempt from access under ... [Section 708(b)(1)(ii) of the RTKL,] 65 P.S. § 67.708(b)(1)(ii)"; "include all or a part of a person's Social Security number, home cellular or personal telephone numbers, employee numbers and other confidential personal identification numbers which are exempt from access pursuant to [Section 708(b)(6)(i) of the RTKL,] 65 P.S. § 67.708(b)(6)(i)"; "include resident identify-

ing information which the Department is prohibited from disclosing pursuant to the terms of the Department's contract with [HHS] for survey and certification services" and "the disclosure of which would result in the loss of Federal or State funds ... [and which] are excluded ... under the exemption in [Section 708(b)(1)(i) of the RTKL,] 65 P.S. § 67.708(b)(1)(i)"; and "are excluded from the RTKL's definition of a public record [set forth in Section 102 of the RTKL, 65 P.S. § 67.102,] as they are exempt from disclosure under other Federal and State law," including "28 Pa.Code § 51.3(e) or (f)" and "The Health Information Portability and Accountability Act of 1996, 42 U.S.C. § 1303 *et. seq.*" (Letter from AORO, Patty Sheaffer, to Requester's Counsel (February 3, 2009) at 2–3, R.R. at 4a–5a.) These alternative reasons for denying the Request are not directly at issue in the present appeal.

openness and places the burden of proving the nonpublic nature of a record on the government by the preponderance of evidence. The OOR rejects as matter of interpretation and common sense that every inquiry and activity conducted by an agency rises to the level of the kinds of noncriminal investigation contemplated in Section 708(b)(17).

At a minimum, a distinction can and must be made between an inspection and an investigation. The inspections conducted in *Cahill [v. Borough of Penndel*, OOR AP# 2009–0023, 2009 WL 6503689 (Final Determination February 19, 2009) ], for example, were performed in response to complaints made to the agency, thereby elevating them to an investigation. [The Department] points to no similar trigger for the activities reflected in the documents sought by [Requester] in this case. The OOR believes that such a blanket classification of the records sought by [Requester] as noncriminal investigations improperly negates the broad reach of the RTKL and frustrates its purpose. Therefore, the OOR finds that the requested records are not exempt from public release as relating to a noncriminal investigation pursuant to § 67.708[ (b) ](17) and places the burden back on [the Department]

where it properly belongs to identify more specifically with each record sought those portions that might be nonpublic as a result of the 708(b)(17) exception.

(OOR Final Determination at 7.) The OOR also rejected the Department's position that the records sought were exempt from public disclosure under the internal, predecisional deliberative records exemption. The Department now petitions this Court for review of the OOR's final determination.[7]

## II. Discussion

Before this Court, the Department and Amici Curiae argue that the OOR erred in concluding that the requested documents are not exempt from public disclosure pursuant to the RTKL under either the noncriminal investigation exemption set forth in Section 708(b)(17) of the RTKL or under the internal, predecisional deliberative records exemption set forth in Section 708(b)(10)(i)(A) of the RTKL.

As an initial matter, before addressing the specific arguments presented, we will briefly review the general principles of the RTKL. Under the RTKL, Commonwealth agencies are required to "provide public records" to requesters "in accordance with [the RTKL]." Section 301(a) of the RTKL,

7. The OOR asks this Court to apply the traditional three-prong appellate standard of review—limited to considering whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated—and to grant deference to the OOR's final determination. However, this request is inconsistent with this Court's recent precedent. In *Bowling v. Office of Open Records*, 990 A.2d 813 (Pa.Cmwlth.2010) (en banc), this Court, interpreting Section 1301(a) of the RTKL, 65 P.S. § 67.1301(a), concluded that its standard of review in open records cases is as follows: "a reviewing court, in its appellate jurisdiction, independently reviews the OOR's orders and may substitute its own find-

ings of fact for that of the agency." *Id.* at 818. This Court also concluded that "a court reviewing an appeal from an OOR hearing officer is entitled to the broadest scope of review," which involves: reviewing "the record on appeal," including "the request for public records, the agency's response, the appeal, the hearing transcript, if any, and the final written determination of the appeals officer"; "reviewing other material, such as a stipulation of the parties, or an *in camera* review of the documents at issue"; and "supplementation of the record through hearing or remand." *Id.* at 820. We are bound by *Bowling* and will follow the standard and scope of review established by that case in conducting our review of the present matter.

65 P.S. § 67.301(a). The term "public record" is defined as "[a] record, including a financial record, of a Commonwealth ... agency that: (1) is not exempt under section 708; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege." Section 102 of the RTKL, 65 P.S. § 67.102. The term "record" is defined as "[i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency." *Id.* Moreover, the term "record" includes "a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document." *Id.* Records possessed by Commonwealth agencies are presumed to be public records, but this "presumption shall not apply if: (1) the record is exempt under section 708; (2) the record is protected by a privilege; or (3) the record is exempt from disclosure under any other Federal or State law, regulation or judicial order or decree." Section 305(a) of the RTKL, 65 P.S. § 67.305(a). "The burden of proving that a record of a Commonwealth agency ... is exempt from public access shall be on the Commonwealth agency ... receiving a request by a preponderance of the evidence." Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1).

■ With these principles in mind, we now turn to the Department and Amici Curiae's argument that the OOR erred in concluding that the requested documents are not exempt from public disclosure under the noncriminal investigation exemption set forth in Section 708(b)(17). They disagree that the RTKL requires a triggering event, such as a complaint, in order for the noncriminal investigation exemption to apply, and believe that the OOR is improperly inserting additional language into the statute by interpreting Section 708(b)(17) as requiring such a triggering event. Instead, they argue that the plain language of Section 708(b)(17), the rules of statutory construction, cases interpreting the former Right–to–Know Law (Prior Law),[8] and strong public policy considerations support the conclusion that the noncriminal investigation exemption applies to the Inspections and Surveys conducted by the Department so as to exempt the requested documents from public disclosure under the RTKL.

The OOR disagrees, believing that if Section 708(b)(17) is interpreted to include regularly-conducted Inspections and Surveys, then the noncriminal investigation exemption could cover virtually any agency activity. The OOR, therefore, argues that it "has reasonably interpreted the RTKL's noncriminal investigation exception to require a trigger such as a complaint or other activity that is confidential or sensitive or those that are extraordinary to those it performs in the course of its official duties." (OOR's Br. at 25.)

Section 708(b)(17) exempts from public disclosure:

A record of an agency relating to a noncriminal investigation, including:

(i) Complaints submitted to an agency.

(ii) Investigative materials, notes, correspondence and reports.

(iii) A record that includes the identity of a confidential source, including individuals subject to the act of De-

---

8. Act of June 21, 1957, P.L. 390, *as amended, formerly* 65 P.S. §§ 66.1–66.9, repealed by Section 3102(2)(ii) of the Act of February 14, 2008, P.L. 6, 65 P.S. § 67.3102(2)(ii).

cember 12, 1986 (P.L. 1559, No. 169), known as the Whistleblower Law.

(iv) A record that includes information made confidential by law.

(v) Work papers underlying an audit.

(vi) A record that, if disclosed, would do any of the following:

(A) Reveal the institution, progress or result of an agency investigation, except the imposition of a fine or civil penalty, the suspension, modification or revocation of a license, permit, registration, certification or similar authorization issued by an agency or an executed settlement agreement unless the agreement is determined to be confidential by a court.

(B) Deprive a person of the right to an impartial adjudication.

(C) Constitute an unwarranted invasion of privacy.

(D) Hinder an agency's ability to secure an administrative or civil sanction.

(E) Endanger the life or physical safety of an individual.

65 P.S. § 67.708(b)(17).

In interpreting the meaning of Section 708(b)(17), this Court is bound by the rules of statutory construction. Pursuant to the rules of statutory construction, "[e]very statute shall be construed, if possible, to give effect to all its provisions." Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a). Moreover, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b). However, where a statute is ambiguous, this Court may look beyond the plain language of the statute and consider other matters, such as: "[t]he occasion and necessity for the statute";

"[t]he object to be attained"; "[t]he former law, if any, including other statutes upon the same or similar subjects"; "[t]he consequences of a particular interpretation"; or "[l]egislative and administrative interpretations of such statute." Section 1921(c) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(c)(1), (4)-(6), (8).

■ While Section 708(b)(17) clearly exempts from public disclosure "record[s] of an agency relating to a noncriminal investigation," the RTKL does not define "noncriminal" or "investigation." It is well settled that, "[w]hen a statute fails to define a term, the term's ordinary usage applies." *Educational Management Services, Inc. v. Department of Education*, 931 A.2d 820, 825–26 (Pa.Cmwlth.2007). Moreover, "[d]ictionaries provide substantial evidence of a term's ordinary usage." *Id.* We initially conclude that the use of the word "noncriminal" in Section 708(b)(17) is intended to signal that the exemption is applicable to investigations other than those which are criminal in nature. This conclusion is supported by the fact that Section 708(b)(16) of the RTKL also exempts records "relating to or resulting in a criminal investigation." 65 P.S. § 67.708(b)(16). Thus, our inquiry here is focused on determining the meaning of the term "investigation." Black's Law Dictionary does not define the term "investigation"; however, it defines the term "investigate" as follows: "1. To inquire into (a matter) systematically; to make (a suspect) the subject of a criminal inquiry.... 2. To make an official inquiry...." Black's Law Dictionary 902 (9th ed.2009). Webster's Third New International Dictionary defines the term "investigation" as follows: "1: the action or process of investigating: detailed examination ... 2. a searching inquiry: ... an official probe...." Webster's Third New International Dictionary 1189 (2002). Therefore, we conclude that,

as used in Section 708(b)(17), the term "investigation" means a systematic or searching inquiry, a detailed examination, or an official probe.

Here, the Inspections performed by the Department involve: visiting and inspecting the building, grounds, equipment and supplies of a nursing home; reviewing records of the nursing home and patients; and observing and interviewing patients and staff of the nursing home. 35 P.S. § 448.813. Moreover, these activities are conducted in order to assess a nursing home's compliance with statutory and regulatory provisions and determine if any corrective and/or disciplinary action needs to be taken. *See* 35 P.S. §§ 448.811–448.814, 448.817. Similarly, the Surveys performed by the Department involve a team of Surveyors who: examine medical records of residents; interview residents, staff, and family members; and make observations of a facility, which include observing medication preparation and administration and dining area and eating assistance practices. 42 C.F.R. § 488.110. These activities are conducted in order to assess whether a nursing home is providing the quality of care mandated by law. *Id.* Thus, in conducting the Inspections and Surveys, the Department is making a systematic and searching inquiry, a detailed examination, and an official probe with regard to a nursing home's operations and whether such operations are in compliance with the Social Security Act, the HCFA, and the applicable state and federal regulations.

Importantly, as the Department and Amici Curiae point out, strong public policy considerations support interpreting Section 708(b)(17) as being applicable to the particular Inspections and Surveys conducted by the Department in this case. First, requiring the Department to disclose Surveyors' notes, witness statements, and other materials related to the Inspections and Surveys could lead to residents and staff of nursing homes being less likely to cooperate and provide relevant information out of fear of retaliation or embarrassment.[9] In turn, if individuals are unwilling to cooperate and participate in the Inspection and Survey process, then the Inspections and Surveys will no longer be an effective means of monitoring a nursing home's compliance with statutory and regulatory requirements. The General Assembly has placed importance on protecting the confidentiality of witnesses or individuals coming forth with information in Section 708(b)(17) by specifically exempting "[c]omplaints;" "[a] record identifying a confidential source"; and "[a] record that includes information made confidential by law." 65 P.S. § 67.708(b)(17)(i), (iii), (iv). The federal regulations also place importance on protecting the confidentiality of witnesses and individuals who provide information to the Department in 42 C.F.R. § 488.110(c), which directs that Surveyors are to meet with residents *in private*, and 42 C.F.R.

9. We note that, according to the OOR's reasoning, the noncriminal investigation exemption would apply to special surveys conducted to investigate complaints or allegations of noncompliance and validation surveys conducted in response to substantial allegations of noncompliance, but would not apply to the standard, regularly-conducted Surveys. However, when the public policy of protecting the confidentiality of residents, staff, and family members who participate in such surveys expressed in the legislation is taken into consideration, this difference in treatment becomes problematic. That is, regardless of whether residents, staff, and family members are providing information to the Department about a nursing home in the context of a special survey, validation survey, or a standard, regularly-conducted Survey, the potential for retaliation and embarrassment is always present and, thus, there is always a need to protect those individuals.

§ 488.110(f)(2), which requires Surveyors to assure residents that the Surveyor "will strive for anonymity" for the resident. Additionally, 42 C.F.R. § 488.325 specifically lists the information that is required to be provided to the public,[10] and Surveyors' notes, worksheets, witness statements, medical records, and other documents generated during the Survey process are *not included* on this list. This illustrates a federal intent that these documents remain confidential. Second, if we were to require the Department to disclose documents pertaining to Investigations and Surveys under the RTKL to Requester here, we would be setting a precedent for future cases where the general public would be able to obtain access to documents which contain unsubstantiated statements or allegations about a nursing home or an individual, without the nursing home or the individual having the opportunity to respond. We believe that this could be problematic.[11] Therefore, we conclude that the Inspections and Surveys conducted by the Department in this case constitute a "noncriminal investigation" for purposes of Section 708(b)(17).

Although the OOR takes the position that the term "investigation," as used in Section 708(b)(17), is limited to investigations initiated by some triggering event, such as a complaint, and does not ever apply to regularly-conducted Inspections and Surveys, there is no support for such an interpretation in the RTKL. It is important to note that, while subsection (i) of Section 708(b)(17) includes a complaint as a type of document that is protected from disclosure under the exemption, that subsection does not condition the applicability of the entire exemption on the presence of a complaint. In fact, there is no reference in Section 708(b)(17) to a triggering event being a prerequisite for the application of the exemption. Thus, as the Department and Amici Curiae correctly observe, the OOR is, in effect, asking this Court to insert language into Section 708(b)(17) that was not provided for by the General Assembly. We are not permitted to take such action. *See Girgis v. Board of Physical Therapy*, 859 A.2d 852, 854 (Pa. Cmwlth.2004) (stating that this Court is not permitted to "insert a word the legislature failed to supply into a statute").

Moreover, it is also important to note that, in passing the RTKL, the General

---

**10.** The information required to be disclosed to the public under 42 C.F.R. § 488.325 is as follows:

> "(1) [s]tatements of deficiencies and providers' comments"; "(2) [a] list of isolated deficiencies that constitute no actual harm, with the potential for minimal harm"; "(3) [a]pproved plans of correction"; "(4) [s]tatements that the facility did not submit an acceptable plan of correction or failed to comply with the conditions of imposed remedies"; "(5) [f]inal appeal results"; (6) "[n]otice of termination of a facility"; "(7) Medicare and Medicaid cost reports"; "(8) [n]ames of individuals with direct or indirect ownership interest in a SNF [Skilled Nursing Facility] or NF [Nursing Facility]"; and "(9) [n]ames of individuals with direct or indirect ownership interest in a SNF or NF … who have been found guilty by a

court of law of a criminal offense in violation of Medicare or Medicaid law."

42 C.F.R. § 488.325.

**11.** We also note that, if this Court were to determine that Section 708(b)(17) does not apply to the Inspections and Surveys conducted by the Department, we would, as the Department and Amici Curiae point out, be paving the way for circumvention of the civil discovery process. That is, under Pa. R.C.P. No. 4009.21(a), a plaintiff bringing a civil action against a nursing facility is required to provide notice to the defendant nursing facility of its intent to seek information from a nonparty, such as the Department. In addition, the defendant nursing facility would have the opportunity to lodge objections before a subpoena could be served on the Department. Pa. R.C.P. No. 4009.21(c).

Assembly had the opportunity to respond to judicial interpretation of the investigation exception set forth in the Prior Law by expressly limiting the applicability of the noncriminal investigation exemption contained in the RTKL. However, it chose not to do so. The investigation exception to the definition of "public record" contained in the Prior Law provided that:

> [T]he term 'public record' shall not include any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants.

Former 65 P.S. § 66.1(2). In determining the applicability of the investigation exception under the Prior Law in a given case, the courts did not focus on whether the investigation was initiated by a complaint or some other triggering event; rather, the courts focused on the nature of the particular documents involved and whether they were created during the course of an investigation. *See Wiley v. Woods,* 393 Pa. 341, 346–48, 141 A.2d 844, 847–48 (1958) (holding that field investigation notes of a surveyor conducting a survey of real properties in response to an inquiry from a city council member following the denial of a rezoning petition were exempt from disclosure under the investigation exception of the Prior Law); *Legal Capital, LLC v. Medical Professional Liability Catastrophe Loss Fund,* 702 A.2d 869, 872–73 (Pa. Cmwlth.1997) (holding that records relating to the settlement of malpractice claims were not protected from disclosure under the investigation exception, and stating that just because an agency practice is in some sense investigative does not shield it from disclosure); *Times Publishing Co. v. Michel,* 159 Pa.Cmwlth. 398, 633 A.2d 1233, 1236 (1993) (holding that applications

for licenses to carry firearms that were completed prior to a sheriff making his determination to issue a license or conduct an independent investigation were not protected from disclosure under the investigation exception of the Prior Law); *Aamodt v. Department of Health,* 94 Pa.Cmwlth. 54, 502 A.2d 776, 777–79 (1986) (holding that records related to a study conducted following the Three Mile Island disaster were part of an investigation conducted by the Department and were exempt from disclosure under the investigation exception of the Prior Law); *Marvel v. Dalrymple,* 38 Pa.Cmwlth. 67, 393 A.2d 494, 498 (1978) (holding that documents related to a promotional test for police officer were not protected from disclosure under the investigation exception of the Prior Law).

If the General Assembly disagreed with this interpretation, it could have drafted the RTKL's noncriminal investigation exemption to apply only where there was a triggering event. Instead of doing so, however, the General Assembly identified six categories of documents that are entitled to the protection of the noncriminal investigation exemption. Additionally, the General Assembly retained language that is substantially similar to the language from the investigation exception under the Prior Law and included in the sixth category, which exempts from disclosure: "A record that, if disclosed, would ... [r]eveal the institution, progress or result of an agency investigation, except the imposition of a fine or civil penalty, the suspension, modification or revocation of a license, permit, registration, certification or similar authorization issued by an agency...." Section 708(b)(17)(vi)(A). The only significant difference between this particular provision and the investigation exception under the Prior Law is that the records revealing the imposition of a fine, civil penalty, suspension, modification, or revo-

cation of a license, etc. (i.e., the end result of certain investigations) are now explicitly excluded from the exemption. That the General Assembly has included this non-criminal investigation exemption in the RTKL and worded it in the manner that it did, even in light of the courts' interpretation of the investigation exception under the Prior Law, is a strong indication that the General Assembly intended to continue protecting from public disclosure those documents which are created during the course of an agency investigation, regardless of whether the investigation was triggered by a complaint or some similar event.

 While the OOR places significance on the fact that the noncriminal investigation exemption under the RTKL no longer refers to investigations conducted as part of an agency's official duties, like the investigation exception under the Prior Law did, we do not believe that the General Assembly's actions in leaving this language out of the RTKL is particularly meaningful. Agencies are creatures of statute and, thus, only have the authority to act pursuant to their official duties as established by their enabling legislation. *Mazza v. Bureau of Driver Licensing*, 692 A.2d 251, 252 (Pa.Cmwlth.1997). As such, in order for an agency to conduct any type of investigation, the investigation would necessarily be a part of the agency's official duties. Therefore, the General As-

sembly likely deemed it unnecessary to retain language referring to an agency's official duties in the noncriminal investigation exemption.

Having determined that the noncriminal investigation exemption would apply to the Inspections and Surveys performed by the Department, we must now determine whether the particular documents requested in this case are exempt from public disclosure. While the OOR contends that the Department failed to meet its evidentiary burden in proving which of the requested documents are protected by the noncriminal investigation exemption, we disagree.[12] Requester sought to obtain documents related to Inspections and Surveys conducted at Requester's facility between 2006 and 2008, "including (but not limited to) surveyor's notes, witness statements, and other materials related to the [Department]'s issuance of a Statement of Deficiencies (e.g., CMS Form 2567)." (Request, January 30, 2009, R.R. at 2a.) Section 708(b)(17)(ii) broadly exempts from public disclosure "[i]nvestigative materials, notes, correspondence and reports." Thus, all of the documents identified in the Request appear to be protected under this provision.

The OOR contends that, in addition to "prov[ing] by a preponderance of the evidence that the public records might otherwise be exempt from disclosure pursuant to one of the 30 exceptions found at Sec-

---

**12.** To the extent that the OOR argues that the Department failed to present sufficient factual evidence during the appeal process, such an argument is problematic given that the OOR did not hold a hearing in this matter. The Department, in the materials that it submitted to the OOR, cited to the same statutes and regulations that it relies upon before this Court. (Department's Memorandum of Law in Support of Kevin M. Bolan, Esquire's Written Right to Know Law Request, March 9, 2009, at 4–7, R.R. at 34a–37a.) Moreover, ascertaining whether the documents identi-

fied in the Request are covered by Section 708(b)(17) can be determined by comparing the Request itself with the language of Section 708(b)(17). If the OOR desired further elaboration from the Department on those statutes and regulations prior to making its decision, it could have held a hearing. *See* Section 1101(b)(3) of the RTKL, 65 P.S. § 67.1101(b)(3) (providing that "[p]rior to issuing a final determination, a hearing may be conducted"); Section 1102(a)(2) of the RTKL, 65 P.S. § 67.1102(a)(2) (providing that "[t]he appeals officer may hold a hearing").

tion 708," the Department was also required to "make every effort to provide as much information as possible from the records through redaction." (OOR's Br. at 27 n. 10.) We disagree that the Department was required to do so in this case.

In makings its argument, the OOR relies on Section 706 of the RTKL, 65 P.S. § 67.706, which provides, in pertinent part, that:

If an agency determines that a *public record* ... contains information which is subject to access as well as information which is not subject to access, the agency's response shall grant access to the information which is subject to access and deny access to the information which is not subject to access. If the information which is not subject to access is an integral part of the public record, legislative record or financial record and cannot be separated, the agency shall redact from the record the information which is not subject to access, and the response shall grant access to the information which is subject to access. The agency may not deny access to the record if the information which is not subject to access is able to be redacted.

65 P.S. § 67.706 (emphasis added). As established by the introductory language of Section 706, the redaction requirement only applies to records that are determined to be "public records." A "public record" is defined in part as "[a] record, including a financial record, of a Commonwealth ... agency that: (1) *is not exempt* under section 708." 65 P.S. § 67.102 (emphasis added). Thus, where as here, a record is determined to fall within one of the exemptions set forth in Section 708, that record does not constitute a "public record" as defined by Section 102. Consequently, Section 706 does not apply.

The OOR also relies on Section 506(c) of the RTKL, 65 P.S. § 67.506(c), which provides that:

An agency *may exercise its discretion* to make any otherwise exempt record accessible for inspection and copying under this chapter, if all of the following apply:

(1) Disclosure of the record is not prohibited under any of the following:

(i.) Federal or State law or regulation.

(ii.) Judicial order or decree.

(2) The record is not protected by a privilege.

(3) The agency head determines that the public interest favoring access outweighs any individual, agency or public interest that may favor restriction of access.

65 P.S. § 67.506(c) (emphasis added). Although Section 506(c) grants an agency the *discretion* to release an otherwise exempt record under certain circumstances, it does not *require* an agency to do so. *See Department of Conservation and Natural Resources v. Office of Open Records,* 1 A.3d 929, 939 n. 16 (Pa.Cmwlth.2010) (explaining that agencies have the discretion, pursuant to Section 506(c), to release otherwise exempt records through the process of redaction when certain conditions are satisfied). Thus, contrary to the OOR's argument, the Department was not required to redact nonpublic information from what are nonpublic records in order to make such records public and subject to disclosure.

### III. Conclusion

Because the requested documents in this case fall within the noncriminal investigation exemption in Section 708(b)(17), they are excluded from the definition of public record in Section 102. As such, those

documents, in their entirety, are not subject to public disclosure. Accordingly, the OOR's final determination is reversed.[13]

### ORDER

**NOW,** September 9, 2010, the order of the Office of Open Records in the above-captioned matter is hereby **REVERSED.**

**13.** Given our disposition as to the first issue, we need not reach the issue of whether the requested documents would also be exempt under the internal, predecisional deliberative records exemption set forth in Section 708(b)(10)(i)(A) of the RTKL.