# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen White, : 
                Petitioner : 
                 : 
          v. :   No. 574 C.D. 2021
                 :   Submitted: March 18, 2022
Pennsylvania Department of : 
Corrections (Office of Open Records), : 
             Respondent : 

BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
              **HONORABLE ELLEN CEISLER,** Judge
              **HONORABLE STACY WALLACE,** Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED: April 18, 2023**

Stephen White (Requester), pro se, petitions for review of the Final Determination issued by the Office of Open Records (OOR) that denied his appeal of the Department of Corrections' (Department) denial of his Right-to-Know Law[1] (RTKL) Request seeking test results performed on specific items confiscated from his cell during an investigative search. The OOR determined the test results are related to a noncriminal investigation, which resulted in Requester receiving a misconduct by the Department, and are exempt from disclosure pursuant to Section 708(b)(17) of the RTKL, 65 P.S. § 67.708(b)(17). For the reasons that follow, we affirm.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

## I. BACKGROUND

Requester filed the Request, which was received by the Department on February 5, 2021, seeking "the results of paperwork, a book and candy tested," which Requester stated were confiscated to be "tested for substances related to cannibanoid (K2) [sic]." (Certified Record (C.R.) Ex. 1 at 7.) Requester sought "the results of these test [sic] and the result of any Legal work and prayer book." (*Id.*) The Department's Agency Open Records Officer (AORO) issued a letter on February 9, 2021, denying the Request. (*Id.* at 10.) The AORO determined that the requested records were exempt from public disclosure under Section 708(b)(1)(ii), the personal security exception; Section 708(b)(2), the public safety exception; Section 708(b)(16), the criminal investigation exception; and Section 708(b)(17), the noncriminal investigation exception of the RTKL, 65 P.S. § 67.708(b)(1)(ii), (2), (16)-(17). (C.R. Ex. 1 at 10-11.)

Requester filed a timely appeal of the denial to the OOR. (*Id.* at 2.) With his appeal to the OOR, Requester submitted a "Concise Statement," wherein he stated he was issued a misconduct for possessing an illegal substance while incarcerated in state prison. (*Id.* at 3.) He further stated he was questioned by an agent of the Bureau of Investigations and Intelligence (BII), who indicated the confiscated items would be sent for testing. (*Id.*) Requester also attached a misconduct that was issued to his appeal. (*Id.* at 6.)

In opposition to Requester's appeal, the Department submitted a position statement and signed declaration by James C. Barnacle,[2] the Director of the BII, who oversees "criminal and noncriminal investigations pertaining to allegations of staff and inmate misconduct within the Department." (C.R. Ex. 3 at 7 ¶ 2.) As it did in

---

[2] (*See* C.R. at Exhibit 3, Page 007-012.)

its denial, the Department argues the requested records were protected by the personal security, public security, criminal investigation, and noncriminal investigation exceptions in Section 708(b)(1)(ii), (2), (16), and (17) of the RTKL. In the position statement, the Department stated, in relevant part, "[t]he records sought, if they exist, would be part of a BII investigation." (*Id.* at 4.) The Department also noted that OOR found BII investigative records exempt from public access in prior final determinations. (C.R. Ex. 3 at 2.) The Department argued that the records are exempt under the noncriminal investigation exception of the RTKL because, pursuant to its regulations, "the Department is tasked with operating its 'institutions and programs to provide protection to the community, a safe and humane environment and opportunities for rehabilitation for inmates'" and have created several policies in this regard. (*Id.* at 5 (quoting 37 Pa. Code § 91.2).)

In Director Barnacle's affidavit, he explained that "[i]t is not the policy of BII to confirm or deny whether it or any other agency . . . has conducted any particular investigations based on alleged complaints" because such acknowledgement "is enough to physically endanger individuals involved in the underlying matter under investigation or to cause the destruction or tampering of evidence or testimony related to the investigation." (*Id.* at 7-8, ¶¶ 6-7.) Director Barnacle's affidavit explains BII's investigation process, stating that after a complaint is received against either an inmate or corrections officer, Department staff is assigned to investigate and the matter may be referred to the Pennsylvania State Police for investigation. (*Id.* at 8, ¶¶ 10-11.) Director Barnacle's declaration further explains, in detail, how disclosure of the requested records could be harmful to many individuals, including the inmate, corrections officer, the complainant, and other staff, among others. For example, he states:

14.  Public disclosure of the contents of investigational records to unauthorized individuals would deprive the complainant, the affected inmate and/or staff, and/or the alleged abuser of the right to an impartial review of the underlying matter.  Staff, inmates, or others who may be adversely interested in the investigation would be aware of its existence and the allegations and would be likely to subject the witnesses, complainant, or alleged victim/abuser or reviewing investigator to threats, manipulation, abuse[,] or other pressure to obtain a particular result.

15.  Public disclosure of investigational records is reasonably likely to result in retaliation by inmates and/or staff whose alleged misbehavior is described in a complaint.  Such individuals would be reasonably likely to identify, harass, threaten[,] or retaliate against the inmate or other person who filed the complaint in order to coerce the inmate or complainant to withdraw the complaint or change their testimony.

16.  Moreover, such individuals would be put on notice to change behavior or destroy evidence related to the investigation, thereby jeopardizing the ability of the Department investigator to gather all relevant facts and reach an impartial or just conclusion with regard to the merits of the complaint.

. . . .

20.  Public availability of investigational records would hinder the Department's ability to secure administrative or civil sanctions or pursue criminal charges in appropriate cases.

. . . .

27.  If public disclosure of investigation records is established, staff and inmate investigation procedures will no longer be effectively utilized.

28.  Inmates in many cases would rather suffer through abusive, dangerous[,] or otherwise adverse conditions, rather than file a complaint that will result in public exposure of personal or sensitive information.

29.  A prison system that does not possess a safe and confidential means for inmates and/or staff to submit complaints or for those complaints to be investigated will be unable to detect and address dangerous conditions or behavior.

4

30. Abusive behavior will persist and grow and trust between inmates and staff will erode.

31. The result will be a more dangerous facility for inmates and staff alike.

32. The requested records are records maintained by the Department in connection with its official law enforcement function of supervising the incarceration of inmates.

33. The disclosure of the requested records would threaten public safety and the Department's public protection activities in maintaining safe and secure correctional institutions by allowing inmates or others to access information that will interfere with essential noncriminal and criminal investigations.

(*Id.* at 8-11, ¶¶ 14-16, 20, 27-33.)

Based upon the parties' submissions, the OOR issued its Final Determination denying Requester's appeal on April 12, 2021. The OOR found that the Department met its burden of proving that the noncriminal investigation exception applied. In doing so, the OOR discussed Director Barnacle's declaration and the Department's regulations, which require that the Department "provide protection to the community [and] a safe and humane environment and opportunities for rehabilitation for the inmates." (Final Determination at 6 (quoting 37 Pa. Code § 91.2).) The OOR explained that "[a] clear function of providing a safe environment for the inmates is the Department's ability to conduct investigations into allegations of wrongdoing by inmates." (*Id*.) The OOR continued:

Requester provided a copy of a disciplinary form, often referred to as a misconduct, issued against [] Requester by the Department due to a violation of Department policy. . . . This form, as well as the language of the Request, provides the OOR with sufficient evidence that an investigation occurred and that the records requested relate to that investigation. . . . Therefore, based on the evidence provided, along with the language of the Request itself, the responsive records are

5

related to a noncriminal investigation and are exempt from disclosure under Section 708(b)(17) of the RTKL.

(*Id.* at 6-7 (internal citation omitted).) Given its disposition, the OOR did not address the Department's claims that other RTKL exceptions applied. (Final Determination at 7 n.2.)

Requester now petitions this Court for review of the OOR's Final Determination.

## II. PARTIES' ARGUMENTS

On appeal,[3] Requester argues the test results are exculpatory evidence, which must be disclosed pursuant to Rule 573(B)(1)(a) of the Pennsylvania Rules of Criminal Procedure, Pa.R.Crim.P. 573(B)(1)(a).[4] (Requester's Amended Brief (Br.) at 11.) Requester also argues that this was a criminal investigation because BII Agent read him his *Miranda* rights[5] and "threatened to file criminal charges" if the

---

[3] "[A] reviewing court, in its appellate jurisdiction, independently reviews the OOR's orders and may substitute its own findings of fact for that of the agency," and "[is] entitled to the broadest scope of review." *Bowling v. Off. of Open Recs.*, 990 A.2d 813, 818, 820 (Pa. Cmwlth. 2010), *aff'd*, 75 A.3d 453 (Pa. 2013).

[4] The Rule provides, in pertinent part:

In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

> (a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth.

Pa.R.Crim.P. 573(B)(1)(a).

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

6

tests yielded positive results for controlled substances. (*Id.*) Requester further argues that Director Barnacle's declaration "is completely frivolous and without merit," (*id.* at 12), although he does not explain how, and "[i]f the Department . . . is allowed to declare an exemption for a negative drug test result, correctional officers will be allowed to declare all drug tests positive for no other reason than to retaliate against an inmate." (*Id.*) Requester maintains that he "would like to be crystal clear that he is in no way interested in any investigative process, procedures, or standard operating guidelines." (*Id.*) Requester's "<u>only</u> interest is the drug test result that proves he is <u>not guilty</u> of possession and distribution of a controlled substance as well as the return of his legal documents and Muslim study guide."[6] (*Id.* at 12 (emphasis in original).) Requester further argues that disclosure is necessary to further the purpose of the RTKL.

The Department primarily reasserts its arguments presented before the OOR, that the requested records are exempt from disclosure under the noncriminal investigation exception of the RTKL. (Department's Br. at 10.) Pursuant to its regulations, the Department asserts that it "has created several policies to instruct staff, inmates, and outsiders on prison rules, guidelines, security, etc." and that the requested records "pertain[] to the results of drug testing conducted on various confiscated items, performed as part of a BII investigation." (*Id.* at 11-12.) According to the Department, the requested records are "maintained by the Department in connection with its official law enforcement function of supervising

---

[6] We note that Requester's interest in obtaining the requested records is irrelevant to this RTKL appeal. *See Hunsicker v. Pa. State Police*, 93 A.3d 911, 913 (Pa. Cmwlth. 2014). *See also* Sections 301 of the RTKL, 65 P.S. § 67.301 (providing "[a] Commonwealth agency may not deny a requester access to a public record due to the intended use of the public record by the requester unless otherwise provided by law"), and Section 703(b) of the RTKL, 65 P.S. § 67.703(b) (providing "[a] written request need not include any explanation of the requester's reason for requesting or intended use of the records unless otherwise required by law").

the incarceration of inmates in a safe and secure manner," and as explained in Director Barnacle's declaration, "BII investigations often lead to noncriminal actions by the Department." (*Id.* at 13.) The Department further argues that Requester's own evidence, namely the misconduct issued against him, demonstrates that the test results were used as part of a noncriminal investigation. (*Id.*)

The Department also asserts that disclosure of the requested records would jeopardize the safety of inmates, staff, and others within the prison system, thus hindering a "clear function" of the Department – the maintenance of a safe environment. (*Id.*) The Department claims it would be unable to effectively utilize its policies because it would be unable to detect and address dangerous conditions and behaviors within the Department as those adversely interested by an investigation would be aware of its existence and likely subject those involved to threats, manipulation, abuse, or other pressure to obtain a particular result. (*Id.*)

The Department further asserts that Requester offers no competent evidence to support his assertion that Director Barnacle's averments in his declaration are frivolous. (*Id.* at 12.) To the extent Requester argues the requested records will show he is not guilty of any misconduct, the Department asserts that Requester's status and the reason for the request are irrelevant to whether the records are accessible under the RTKL. (*Id.* at 14.) Finally, the Department contends Requester did not assert the argument about the test results being exculpatory evidence under Rule 573 of the Pennsylvania Rules of Criminal Procedure before the OOR and therefore that argument is waived. (*Id.* at 14 n.1.)

## III. DISCUSSION

Under the RTKL, Commonwealth agencies are required to "provide public records" to requesters "in accordance with [the RTKL]." Section 301(a) of the RTKL, 65 P.S. § 67.301(a). The term "public record" is defined as:

[a] record, including a financial record, of a Commonwealth . . . agency that: (1) is not exempt under [S]ection 708; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege.

Section 102 of the RTKL, 65 P.S. § 67.102. Records possessed by a Commonwealth agency are presumed to be public records, but this "presumption shall not apply if: (1) the record is exempt under [S]ection 708; (2) the record is protected by a privilege; or (3) the record is exempt from disclosure under any other Federal or State law or regulation or judicial order or decree." Section 305(a) of the RTKL, 65 P.S. § 67.305(a). The Commonwealth agency has the burden of proving, by a preponderance of the evidence, that the record is exempt from public access. 65 P.S. § 67.708(a)(1). In this case, the Department bears the burden of proving that the requested records are not public records disclosable under the RTKL because the records are exempt as a record of noncriminal investigation under Section 708(b)(17) of the RTKL.

The noncriminal investigation exemption of the RTKL, 65 P.S. § 67.708(b)(17), exempts from public disclosure,

(i) Complaints submitted to an agency.

(ii) Investigative materials, notes, correspondence[,] and reports.

. . . .

(vi) A record that, if disclosed, would do any of the following:

9

(A) Reveal the institution, progress or result of an agency investigation, . . . .

65 P.S. § 67.708(b)(17)(i)-(ii), and (vi)(A). This Court has determined that the term "investigation" means "a systematic or searching inquiry, a detailed examination, or an official probe." *Dep't of Health v. Off. of Open Recs.*, 4 A.3d 803, 811 (Pa. Cmwlth. 2010). For this exemption to apply, an agency's inquiry, examination, or official probe must be conducted as "part of the agency's official duties." *Id.* at 814. "As such, in order for an agency to conduct any type of investigation, the investigation would necessarily be a part of the agency's official duties." *Id.*

Based upon the evidence presented, the OOR did not err in concluding the Department satisfied its burden in establishing the test results were exempt from public disclosure under the noncriminal investigation exemption. As the OOR noted, Requester's own documentation submitted in support of his appeal, supports this conclusion. The evidence establishes that on July 16, 2020, Requester received a Class I Misconduct for possession or use of a dangerous or controlled substance. (C.R. Ex. 1 at 6.) The Misconduct Report provides that, based on information received by a confidential informant, Requester was in possession of and distributing K2 Synthetic cannabinoids, and correctional officers performed an investigative search of Requester's cell. (*Id.*) During the search, the correctional officers confiscated a binder of legal material from Requester, which "tested positive with the ion scan for Carfentanyl/F5-MDMB-PICA (K2)." (*Id.*) Additional field testing was performed on the item "with the NARK II Synthetic Cannabinoids test kit Lot #201710002 that produced a positive result." (*Id.*) Thus, the Misconduct Report establishes that the testing performed on various items confiscated from Requester's cell, and the testing results, relate to the investigation into Requester's alleged

violation of Department rules and regulations, namely possession or use of a dangerous or controlled substance.

Department regulations provide "[i]t is the goal of the Department to operate its institutions and programs to provide protection to the community, a safe and humane environment and opportunities for rehabilitation for the inmates." 37 Pa. Code § 91.2. To effectuate the goal of the Department, it has many policies governing the operation and treatment of inmates. Relevant to this case is DC-ADM 801, which provides, in relevant part, "[e]very inmate under the jurisdiction of the Department is expected to follow Department rules and regulations. If an inmate violates Department rules and regulations, the violation shall be reported and disposed of either by an informal or formal process.[]" DC-ADM 801, Section 1(A)(1) (footnote omitted).[7] In short, the requested records relate to a Level I Misconduct for possession or use of a dangerous or controlled substance issued against Requester pursuant to DC-ADM 801, which was issued pursuant to an internal, Department noncriminal investigation.

Requester argues the noncriminal investigation exception does not apply because the requested records relate to a criminal investigation. (Requester's Br. at 12.) Because a record is exempt from disclosure under one exception does not mean it cannot be exempt under another exemption. Furthermore, even if the record is determined to be related to a criminal investigation, Requester would not prevail as it would be protected by Section 708(b)(16) of the RTKL.

Requester also asserts that the requested records are exculpatory evidence pursuant to Rule 573(B)(1)(a) of the Pennsylvania Rules of Criminal Procedure. Pa.R.Crim.P. 573(B)(1)(a). Even assuming this issue is not waived for failing to

---

[7] Department Policy DC-ADM 801 can be found at https://www.cor.pa.gov/About%20Us/ Documents/DOC%20Policies /801%20Inmate%20Discipline.pdf (last visited April 17, 2023).

11

assert it before the OOR, Rule 573(B)(1)(a) is inapplicable to this proceeding because the Pennsylvania Rules of Criminal Procedure "govern criminal proceedings." Rule 100(A) of the Pennsylvania Rules of Criminal Procedure, Pa.R.Crim.P. 100(A).[8]

Finally, Requester argues Director Barnacle's affidavit is "completely frivolous and without merit." (Requester's Br. at 12.) However, Requester fails to offer any evidence to support his assertion, and the Court, upon its own review, discerns no such evidence. Moreover, as discussed above, the evidence presented by Requester alone is sufficient to find the test results are related to a noncriminal investigation conducted by BII, which resulted in Requester receiving a misconduct for violating Department policies and rules.

## IV. CONCLUSION

Based on the foregoing reasons, the test results of the items confiscated from Requester's cell, which resulted in him being issued a misconduct for violating Department policies and rules, are exempt from disclosure under the RTKL as related to a noncriminal investigation performed by BII. Accordingly, the OOR's Final Determination is affirmed.

**RENÉE COHN JUBELIER,** President Judge

---

[8] In a related argument, Requester argues that the Department should not be able to withhold the drug test results because there is no way to confirm the results and it would be possible for a correctional officer to retaliate against an inmate. (Requester's Amended Br. at 11.) The Court understands Requester's argument and shares his concerns. While there may be administrative processes to obtain the results, the RTKL is not the means to do so.

**IN THE COMMONWEALTH COURT OF PENNSYLVANI**

Stephen White,
            Petitioner

        v.

Pennsylvania Department of
Corrections (Office of Open Records),
            Respondent

:
:
:
:
:
:
:
:
:
:

No.  574 C.D. 2021

# **O R D E R**

**NOW**, April 18, 2023, the Final Determination of the Office of Open Records, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____

**RENÉE COHN JUBELIRER,** President Judge