Christopher N. **SCHRIER, as Republican Candidate for Township of Bensalem Council and Scott Blacker and Tim Wharton, as Democratic Candidates for Township of Bensalem Council**

v.

Edward **KISSELBACK, Republican Councilman for Township of Bensalem and Republican Candidate for an Unlawful Third Term of Office, Councilman Joseph Szafran, Unlawfully Serving a Fourth Term, Councilman**

William Maddocks, Unlawfully Serving a Third Term, and Mayor Joseph Digirolamo, Unlawfully Serving a Third Term

Appeal of: Scott Blacker and Tim Wharton, as Democratic Candidates for Township of Bensalem Council.

Commonwealth Court of Pennsylvania.

Argued June 8, 2005.
Decided July 21, 2005.

Lawrence M. Otter, Doylestown, for appellants.

Joseph W. Pizzo, Trevose, for appellees.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

Democratic candidates (Challengers)[1] for City Council in the Township of Bensalem appeal the order of the Court of Common Pleas of Bucks County that sustained the preliminary objections[2] of the incumbents (Office Holders),[3] and dismissed Challengers' amended complaint with prejudice.[4] On appeal, Challengers

1. The candidates who have appealed to our Court are Scott Blacker and Tim Wharton.

2. In its order dated April 20, 2004, the trial court sustained Office Holders' preliminary objection in the nature of a demurrer for failure to state a quo warranto claim, and deemed the remaining preliminary objections moot. (Trial Ct. Op. at 3.)

3. The incumbents at the time were Council members Edward Kisselback, Joseph Szafran and William Maddocks, and Mayor Joseph DiGirolamo.

4. This Court's review of the trial court's order sustaining preliminary objections in the nature of a demurrer is to determine whether

present the following question:[5] "Shall the elected Mayor and elected council members, in direct violation of the will of the people of the Township of Bensalem who by referendum on November 3, 1987 voted in favor of a new form of government with express term limits, remain in office?"[6] (Challengers Br. at 3.)

Bensalem Township (Township) is a duly organized township of the Second Class, and was governed by a five-member Board of Supervisors. On November 3, 1987, the registered electors of the Township voted in a referendum to accept a proposed new form of local government. That referendum was initiated after a report produced by members of the Township's Government Study Commission (Commission), empanelled pursuant to the Home Rule Charter and Optional Plans Law (Optional Plans Law),[7] recommended, pursuant to Section 2923(1) of the Optional Plans Law, 53 Pa.C.S. § 2923(1), that the Township adopt an optional plan form of government. Of particular import here, the Commission's report also recommended, *inter alia*, the implementation of term limits in the Township:

The Commission recommends the adoption of Mayor–Council Plan B, which is explained in this report. Additionally,

the Commission makes the following specific recommendations:

. . .

h. The Mayor and Council members shall be limited to two (2) consecutive terms of office;

. . .

(N.T., Ct. Ex. 1 at 7.) On November 3, 1987, the referendum question posed to the voters included an interpretative statement, *see* 53 Pa.C.S. §§ 2925, 2926, and read as follows:

## OPTIONAL PLAN QUESTION

Shall MAYOR–COUNCIL PLAN B, including recommendations pertaining to optional provisions contained in the report of the Government Study Commission dated August 1, 1987, as authorized by the Home Rule Charter and Optional Plans Law, be adopted by BENSALEM TOWNSHIP?

## INTERPRETIVE STATEMENT

A YES vote means the adoption of a plan of government that would include a Mayor, a five member Council, and a Treasurer (Tax Collector) all elected at-large. The government will include a Department of Administration, and will

---

the trial court abused its discretion or committed an error of law. *Sweeney v. Merrymead Farm, Inc.*, 799 A.2d 972 (Pa.Cmwlth. 2002).

5. Office Holders present a counter-statement of the question as follows:

[(1)] Did the court below properly determine that under the Home Rule Charter and Optional Plans Law, that the Government Study Commission was not empowered to recommend term limits?

. . .

[(2)] Does Challengers' Amended Complaint fail to plead a cause of action in *quo warranto?*

(Office Holders Br. at 1.)

6. Challengers sought appeal directly to the Supreme Court pursuant to Section 722 of the Judicial Code, 42 Pa.C.S. § 722(2), which allows direct appeals in cases involving the right to public office, and by invocation of the Court's King's Bench powers. *See* Office Holders Br. at 5. The Supreme Court ordered that, pursuant to Pa. R.C.P. No. 909(c), consideration of the question of jurisdiction be postponed until the parties had filed briefs on both jurisdiction and the substance of the appeal. *Id.* at 5–6. Thereafter, without oral argument, the Supreme Court transferred the instant appeal to this Court by order dated March 29, 2005.

7. 53 Pa.C.S. §§ 2901—3171.

be subject to the limitations in the Second Class Township Code. The Mayor will have limited veto power over actions of the Council. If adopted by the voters, the new plan will become effective on January 1 of 1990, and must remain in effect for five years before any further changes can take place.

A NO vote means retaining the present form of government.

(N.T., Ct. Ex. 1 at 10.) The referendum passed by a vote of 4,352 to 3,156.

In January of 1990, the Township adopted Optional Plan B, a Mayor–Council form of government, as set forth in the Optional Plans Law.[8] At its first meeting, the new Township Council adopted the Township Administrative Code, which described the form and structure of the new government. *The Township Council did not include a provision in its Administrative Code providing for term limits.*

On May 16, 2003, Challengers, both candidates for seats on Township Council in the primary election to take place on May 20, 2003, filed a quo warranto action against Kisselback, who was an incumbent Councilman at the time. They challenged the legitimacy of his candidacy for the office of Councilman in the General Election of November 4, 2003, based on the term limits allegedly imposed in the Township's optional form of government.[9]

On June 25, 2003, Kisselback filed preliminary objections to Challengers' original complaint. Challengers subsequently filed an amended complaint on September 12, 2003, and added additional defendants—Szafran, Maddocks and DiGirolamo—alleging that each of them was "holding office unlawfully." (First Amended Complaint at ¶¶ 4–6, 17). Szafran and Maddocks were incumbent Councilmen serving their fourth and third consecutive terms, respectively. DiGirolamo was the incumbent Mayor serving his third term of office.

On October 15, 2003, Office Holders filed preliminary objections to Challengers' amended complaint, alleging, *inter alia*, that Challengers had failed to cite any law, statute, and/or ordinance imposing term limits on members of Council and/or the Mayor. A hearing was held before the trial court on April 12, 2004. By order entered April 20, 2004, the trial court sustained Office Holders' preliminary objection in the nature of a demurrer for Challengers' failure to state a quo warranto claim, and deemed their remaining preliminary objections moot.

The trial judge, the Honorable David W. Heckler, relying on *Kline v. City of Harrisburg*, 362 Pa. 438, 68 A.2d 182 (1949) (citing Dillon on Municipal Corps., § 89), noted that municipalities are not sovereign entities, and their powers are limited to "those that are granted in express words, necessarily or fairly implied in or incident to the powers expressly granted, or essential to the declared objects and purposes of the municipality and not merely convenient but indispensable." (Trial Ct. Op. at 5.) The court noted that The Second Class Township Code (Code)[10] and the Optional Plans Law contain no express authorization for term limits, and grant no other express power from which authority could be inferred to establish term limits. (Trial

---

8. The general statutory authority for the "Executive (Mayor)—Council Plan B" is provided in Section 3031 of the Optional Plans Law, 53 Pa.C.S. § 3031.

9. Despite the pendency of the lawsuit, Kisselback emerged from the primary election as the Republican candidate, and was subsequently elected to his third term as Councilman in November of 2003.

10. Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §§ 65101–68701.

Ct. Op. at 6.) The court also explained that:

> [t]hat statutorily mandated question [pursuant to Sections 2925 and 2926 of the Optional Plans Law] does not advise voters that the Plan will include *any* recommendation made by the ... Commission but rather that it will include those recommendations which pertain 'to optional provisions ... as authorized by the [Optional Plans Law]....'"

*Id.* The trial court indicated that the Commission had no statutory authority to recommend the establishment of term limits in the optional plan and, therefore, the voters in the Township could not have adopted such limits. Thus, the court found no basis for the Challengers' quo warranto claim, and dismissed Challengers' amended complaint against all Officer Holders.

■ We conclude that the trial court thoroughly and correctly analyzed the issues in this case, and agree with the conclusions it reached. Our Supreme Court's opinion in *City Council of Bethlehem v. Marcincin,* 512 Pa. 1, 515 A.2d 1320 (1986), cited by both parties, does not compel a different analysis. In *Marcincin,* the issue was whether "a third class municipality operating under ... the Charter Law[, Act of July 15, 1957, P.L. 901, *as amended,* 53 P.S. §§ 41101—41625,] has *authority to promulgate an ordinance* limiting the number of times a municipal officer can stand for reelection." *Id.* at 9, 515 A.2d at 1324 (emphasis and footnote added). The Court found that it did because neither the Charter Law nor other statutory authority precluded the City Council of Bethlehem from *enacting an ordinance* imposing term limits on the city's mayor. *Id.* at 11, 515 A.2d at 1325.

However, the question before Judge Heckler and this Court is not whether Bensalem Township Council had the authority to promulgate an ordinance imposing term limits on Township officials. Here, there was no such ordinance; when the new government of Bensalem Township first convened to adopt a new Township Administrative Code, *the term limits provision was not included.* Rather, the issue before us is whether the referendum vote in favor of adopting the new form of government *required* the Township Council to implement term limits because it was a recommendation by the Commission. We agree with Judge Heckler that it does not.

Accordingly, finding neither an error of law nor an abuse of discretion, we affirm the trial court's order, and adopt the well-reasoned opinion of Judge Heckler, entered in *Schrier, et al. v. Kisselback, et al.,* No. 03–03202–24–5 (C.P. Bucks July 23, 2004).

### *ORDER*

**NOW,** July 21, 2005, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is hereby affirmed on the opinion of the Honorable David W. Heckler, entered in *Schrier, et al. v. Kisselback, et al.,* No. 03–03202–24–5 (C.P. Bucks July 23, 2004), —— D & C —— 4th (2004).