Jean COULTER, Petitioner

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 21, 2012.
Decided April 18, 2013.

Jean Coulter, pro se.

Marisa L. Cohan, Assistant Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge McCULLOUGH.

Jean Coulter (Requester) petitions, *pro se,* for review of the January 6, 2012 final determination of the Office of Open Records (OOR) upholding the denial of her request for certain information from the Department of Public Welfare (DPW) under the Pennsylvania Right to Know Law (RTKL).[1]

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

On October 8, 2011, Requester submitted a written request for information to DPW, which states as follows:

I have enclosed a copy of a letter dated September 29, 2011, which references investigations in the second paragraph. I am requesting the names of the investigator(s), the notes of their investigations, internal correspondences both those within the [DPW] (other investigators and with [DPW] employees implicated in the investigation) as well as correspondence with the [Butler County Children and Youth Services] and the various versions of the reports produced as a result of these investigations. Clearly these investigations are in the "public domain," as the Secretary [of DPW] has distributed the "results."

(Reproduced Record (R.R.) at 1a.)

█ As part of her request, Requester attached a copy of the September 29, 2011 letter referenced in her request. In this letter, DPW's Secretary (Secretary) confirmed that he received correspondence and documentation from Requester alleging impropriety on the part of Butler County Children and Youth Services (CYS) related to the foster care placement of her daughter after Requester's parental rights were terminated by court order. In the second paragraph of the letter, the Secretary states, in pertinent part: "In reviewing your current information and past correspondences, it appears that your concerns have been investigated, although I recognize that you have not been satisfied with the outcome of the investigations." (R.R. at 4a.)

On October 20, 2011, DPW informed Requester that it needed an additional 30 days to respond to the request in order to conduct a legal review of the documents.[2] By letter dated November 21, 2011, DPW told Requester that it interpreted her request to be for records regarding the investigation that DPW completed in response to her complaint about her daughter and CYS that resulted in DPW issuing a licensing inspection summary and CYS submitting proposed plans of correction that DPW deemed acceptable.

In response, DPW provided Requester with "the names of the investigators" but denied her request for "notes" and "internal correspondence" related to the investigation, explaining that these documents did not exist. DPW also denied the request for "correspondence with [CYS]" during the investigations and "the various versions of the reports produced as a result of the investigations" on the ground that this portion of Requester's request sought noncriminal investigative records, which are exempt from disclosure under section 708(b)(17)(ii) of the RTKL.[3] (R.R. at 5a–11a.)

Requester filed an appeal to the OOR, and the OOR invited the parties to supplement the record. On December 21, 2011, DPW submitted a position statement along with an affidavit from its Open Records Officer, Andrea Bankes, and an unsworn statement from its Western Regional Director for the Bureau of Children and Family Services, Elaine Bobick (Bobick).[4]

---

2. Pursuant to section 902(a)(4) and (b)(2), 65 P.S. § 67.902(a)(4), (b)(2), an agency's open-records officer may seek a 30-day extension on the ground that a legal review is necessary to determine whether the requested record is subject to access under the RTKL.

3. Section 708(b)(17)(ii) of the RTKL exempts from public access "[a] record of an agency relating to a noncriminal investigation, including … [i]nvestigative materials, notes, correspondence and reports." 65 P.S. § 67.708(b)(17)(ii).

4. Although Bobick's averments were con-

DPW also attached information related to the four requests that Requester previously submitted regarding her daughter and CYS, including DPW's disposition of the requests and, when applicable, the final determinations of the OOR. (Supplemental Reproduced Record (S.R) at 1b–55b.)

In its final determination, the OOR first decided that Requester did not challenge DPW's denial for "notes" and "internal correspondence." Consequently, the OOR found that the only issue before it was whether the portion of Requester's request seeking "correspondence with CYS" and "the various versions of the reports produced as a result of the investigations" were exempt as noncriminal investigative records. Relying on Bobick's unsworn statement, the OOR found that DPW carried its burden of proving that it conducted a "noncriminal investigation." The OOR further concluded that the request explicitly sought "reports" and "correspondence" generated from the investigation and, therefore, was facially exempt under section 708(b)(17) of the RTKL. Requester

filed a timely petition for review with this Court.

■ On appeal,[5] Requester argues that the OOR erred in finding that DPW met its burden of proving that the requested records were exempt. Requester asserts that Bobick's unsworn statement did not meet the requirements of an affidavit because it was not signed or verified under the penalty of perjury and that Bobick lacked personal knowledge regarding the investigation.[6]

In response, DPW contends that it met its burden because Requester's request falls squarely within the exemption's plain language and, consequently, an analysis of Bobick's statement is unnecessary. Alternatively, DPW argues that the OOR properly considered Bobick's unsworn statement as evidence, claiming that the averments in the document are corroborated by other documents in the record and prove that Bobick had personal knowledge of the investigation. Finally, DPW has filed an Application for Relief to Supplement the Record with this

tained in a document entitled an "affidavit," the document did not meet the requirements of an affidavit because it was neither notarized before an official authorized to administer oaths nor signed under the penalty of perjury. *See Commonwealth v. Thomas*, 908 A.2d 351 (Pa.Super.2006) (discussing requirements for and distinctions between affidavits and declarations).

In general, Bobick's statement averred the following facts. DPW received a complaint from Requester concerning CYS's handling of her daughter's case while she was placed in foster care. DPW followed its normal procedures and investigated CYS. DPW's investigation determined that CYS was not in compliance with applicable regulations, and DPW issued a licensing inspection summary setting forth the violations found. CYS submitted three proposed plans of correction and DPW accepted the third one; DPW was satisfied with CYS's final plan of correction and did not commence an adverse action against its

license. Finally, DPW provided Requester with a courteous copy of the license inspection summary and CYS's final plan of correction. (R.R. at 16a–17a.)

5. We independently review a determination of the OOR and may substitute our own findings of fact for that of the agency. Our scope of review is plenary. *Hodges v. Pennsylvania Department of Health*, 29 A.3d 1190, 1192 n. 6 (Pa.Cmwlth.2011).

6. Requester also claims that DPW did not prove that the "notes" and "internal correspondence" concerning the investigation did not exist. However, Requester did not challenge DPW's denial of these documents before the OOR. (*See* R.R. at 13a–15a.) Therefore, Requester's arguments concerning the "notes" and "internal correspondence" are waived for purposes of this appeal. *Fort Cherry School District v. Coppola*, 37 A.3d 1259 (Pa.Cmwlth.2012).

Court, requesting that we accept a sworn affidavit from Bobick, made under the penalty of perjury, wherein she attests to the veracity of the facts she provided in her previous statement to the OOR.

█ The purpose of the RTKL is "to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions...." *Bowling v. Office of Open Records*, 990 A.2d 813, 824 (Pa. Cmwlth.2010), *appeal granted in part*, 609 Pa. 265, 15 A.3d 427 (2011). Section 301(a) of the RTKL mandates that "[a] Commonwealth agency shall provide public records in accordance with this act." 65 P.S. § 67.301(a). Section 305(a) of the RTKL states that records possessed by Commonwealth agencies are presumed to be public records, but that this "presumption shall not apply if ... the record is exempt under section 708." 65 P.S. § 67.305(a)(1). In turn, section 708(b)(17)(ii) of the RTKL exempts from public access "[a] record of an agency relating to a noncriminal investigation, including ... [i]nvestigative materials, notes, correspondence and reports." 65 P.S. § 67.708(b)(17)(ii). It is the agency's burden to prove that a record is exempt by a preponderance of the evidence. 65 P.S. § 67.708(a).

In *Department of Health v. Office of Open Records*, 4 A.3d 803 (Pa.Cmwlth. 2010), a requester sought surveys and/or inspections that the Department of Health (DOH) issued to a nursing home, including notes, witness statements, and other materials related to the DOH's issuance of a statement of deficiencies. In response, the DOH denied the request on the basis that it sought records connected with a noncriminal investigation. On appeal, the OOR granted the request and concluded that the noncriminal investigation exemption was inapplicable. In doing so, the OOR drew a distinction between an inspection and an investigation and rejected "as a matter of interpretation and common sense that every inquiry and activity conducted by an agency rises to the level of the kinds of noncriminal investigation contemplated in [s]ection 708(b)(17)." *Department of Health*, 4 A.3d at 807–08. On further appeal, this Court reversed.

█ In construing the noncriminal investigation exemption, this Court noted that the RTKL does not define "investigation," and we concluded that as used in section 708(b)(17), the term "investigation" means "a systematic or searching inquiry, a detailed examination, or an official probe." *Department of Health*, 4 A.3d at 810–11.[7] Our analysis of relevant statutes

7. As we explained:
  While Section 708(b)(17) clearly exempts from public disclosure "record[s] of an agency relating to a noncriminal investigation," the RTKL does not define "noncriminal" or "investigation." It is well settled that, "[w]hen a statute fails to define a term, the term's ordinary usage applies." *Educational Management Services, Inc. v. Department of Education*, 931 A.2d 820, 825–26 (Pa.Cmwlth.2007). Moreover, "dictionaries provide substantial evidence of a term's ordinary usage." *Id.* We initially conclude that the use of the word "noncriminal" in Section 708(b)(17) is intended to signal that the exemption is applicable to

investigations other than those which are criminal in nature. This conclusion is supported by the fact that Section 708(b)(16) of the RTKL also exempts records "relating to or resulting in a criminal investigation." 65 P.S. § 67.708(b)(16). Thus, our inquiry here is focused on determining the meaning of the term "investigation." Black's Law Dictionary does not define the term "investigation;" however, it defines the term "investigate" as follows: "1. To inquire into (a matter) systematically; to make (a suspect) the subject of a criminal inquiry.... 2. To make an official inquiry...." Black's Law Dictionary 902 (9th ed.2009). Webster's Third New International Dictionary defines

and regulations emphasized that the DOH is responsible for issuing licenses to, and conducting inspections of, health care facilities and is obligated to enforce licensing and certification requirements. Relying on these statutes and regulations, we concluded that the inspections and surveys referenced in the request pertained to matters in which the DOH made an "official probe," or noncriminal investigation, with regard to whether the nursing home's operations were in compliance with the applicable regulations. In addition, this Court disagreed with the OOR's contention that the DOH failed to meet its evidentiary burden to prove that the requested documents are protected by the noncriminal investigation exemption. Instead, we observed that "ascertaining whether the documents identified in the [r]equest are covered by [s]ection 708(b)(17) can be determined by comparing the [r]equest itself with the language of [s]ection 708(b)(17)" and concluded that the documents identified in the request fell within the plain language of section 708(b)(17). *Department of Health*, 4 A.3d at 814 n. 12. For these reasons, we held that the requested documents were exempt from disclosure under the RTKL.

Here, Requester did not contest the DPW's interpretation of her request on appeal to the OOR and cannot do so before this Court. *See Fort Cherry School District v. Coppola*, 37 A.3d 1259, 1261–62 (Pa.Cmwlth.2012) (concluding that a requester waives an issue regarding a re-

quest and/or agency denial by failing to raise the issue before the OOR); *Department of Corrections v. Disability Rights Network of Pennsylvania*, 35 A.3d 830, 833 (Pa.Cmwlth.2012) (concluding "that the nature of the dispute is fixed by the denial letter and, unless the parties agree, there can be no change in the nature of the request").[8] Consequently, the language of the request demonstrates that: Requester requested DPW to investigate CYS concerning her child's placement in foster care; DPW investigated Requester's complaint pursuant to its authority to conduct complaint inspections; and CYS submitted proposed plans of corrections that DPW deemed to be acceptable. As in *Department of Health*, DPW's regulations, in and of themselves, prove that DPW conducted "an official probe," or noncriminal investigation, when it inspected CYS.

Pursuant to its broad supervisory and regulatory authority, DPW governs and oversees county children and youth social service agencies. Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§ 101–1503; 55 Pa.Code §§ 3130.1, 3130.12. With respect to foster care programs, a county agency must obtain licensure from DPW and must satisfy DPW's procedural requirements regarding the issuance of a certificate of compliance. 55 Pa.Code §§ 3130.1, 3130.81. The county agency is subject to DPW's authority to conduct inspections, particularly an annual, announced inspection, unannounced on-site inspections, and complaint inspections. 55

---

the term "investigation" as follows: "1. the action or process of investigating: detailed examination ... 2. a searching inquiry: ... an official probe...." Webster's Third New International Dictionary 1189 (2002). *Department of Health*, 4 A.3d at 810–11.

**8.** Additionally, Requester's previous RTKL requests to DPW and intervening correspondence establish that DPW's interpretation of Requester's request is the only sustainable

one. *See* S.R. at 17b–19b, 23b, 30b–32b, 34b, 41b–45b. Therefore, to the extent that Requester's brief can be read to request documents unrelated to DPW's investigation resulting in CYS submitting acceptable proposed plans of correction, Requester seeks documents that are outside the scope of her original request. *See Disability Rights Network of Pennsylvania*.

Pa.Code §§ 20.31–20.33. When DPW conducts an inspection, it will issue a certificate of compliance if the county agency is in compliance with applicable statutes, ordinances and regulations; however, if DPW observes that the county agency is not compliant with licensure or approval regulations, the county agency is obligated to submit an acceptable written plan to correct each noncompliant item. 55 Pa. Code §§ 20.51–20.53. In the event that a county agency fails to submit an acceptable plan to correct noncompliant items, DPW may deny, revoke, or refuse to renew the agency's certificate of compliance. 55 Pa.Code § 20.71.

In light of these regulations, especially those pertaining to DPW's duty to investigate complaints to determine whether an agency is compliant with applicable laws and its power to compel acceptable plans of correction, we conclude that Requester's request establishes that Requester is seeking documents produced as a result of a "noncriminal investigation." *Department of Health*. See *Johnson v. Pennsylvania Convention Center Authority*, 49 A.3d 920, 925–26 (Pa.Cmwlth.2012) (collecting and analyzing cases to deduce the proposition that the noncriminal investigation exception precludes disclosure of materials related to noncriminal investigations conducted by an agency acting within its "investigative powers" or "official duties").

Moreover, whether the documents identified in Requester's request are covered by section 708(b)(17) of the RTKL can be determined by comparing the request itself with the language of section 708(b)(17). *Department of Health*. Here, Requester seeks the DPW's "correspondence" and "the various versions of the reports that were produced as a result of the investigations." By its very terms, section 705(b)(17) exempts "correspondence and reports" related to a noncriminal investigation, and this language clearly encompasses the documents that Requester seeks. Therefore, as in *Department of Health*, we conclude that DPW carried its burden of proof by showing that Requester requests documents that fall within the plain language of the noncriminal investigation exemption.

Having concluded that the language of Requester's request, standing alone, proves that Requester seeks documents that are exempt under section 708(b)(17), we need not address Requester's arguments concerning the sufficiency or evidentiary value of Bobick's unsworn statement. Because the OOR properly determined that the requested records are excepted under the noncriminal investigation exemption, we affirm the OOR's final determination.[9] Due to our disposition, we deny DPW's application to supplement the record as moot.

### ORDER

AND NOW, this 18th day of April, 2013, the January 6, 2012 final determination of the Office of Open Records is hereby affirmed. The Department of Public Welfare's Application for Relief to Supplement the Record is denied as moot.

---

**9.** Although our rationale differs from that of the OOR, we are not limited to or bound by the legal reasoning of the OOR. *Bowling*.