# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lackawanna County Government :
Study Commission, :
                   Appellant :
                                    :
               v. : No. 1938 C.D. 2014
                                     : Argued: September 14, 2015
The Scranton Times, L.P. d/b/a The :
Times Tribune :

BEFORE:    **HONORABLE BONNIE BRIGANCE LEADBETTER,** Judge
                       **HONORABLE MARY HANNAH LEAVITT,** Judge
                       **HONORABLE JAMES GARDNER COLINS,** Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE LEADBETTER**                      **FILED:  November 20, 2015**

        The Lackawanna County Government Study Commission (Commission) appeals from the November 14, 2014 Order of the Court of Common Pleas of Lackawanna County affirming the Final Determination of the Office of Open Records (OOR) requiring production of unredacted copies of three emails received by the Commission's investigator. Finding no error, we affirm.

        This matter began with a Right to Know Law[1] (RTKL) request by The Scranton Times (Times) for unredacted copies of three emails that are part of the materials gathered by the Commission's investigator. The Commission's formation

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

was authorized by Lackawanna County voters on May 21, 2013 "to study the existing form of government of [the] County, to consider the advisability of the adoption of an optional form of government, and to recommend whether or not an option plan . . . should be adopted" in the county. Common Pleas' Opinion at 5.

The Commission's statutory authority is found in the Home Rule Charter and Optional Plan Law (HRCOPL), 53 Pa. C.S. §§ 2901-2984. The Commission held several public meetings/hearings starting with an organizational meeting on June 27, 2013 during which the Commissioners elected a Chair and a Secretary. At the Commission's November 13, 2013 hearing, a member of the public complained about a lease agreement for space at the Lackawanna County Visitors Center entered into between the county and a private child care vendor. Following a discussion the Commission Chair moved "to empower . . . our general counsel" to conduct an investigation "[e]ven to the point of, if you need to retain, investigative authorities." Reproduced Record (R.R.) at 374a-375a.

On that basis, the Commission's counsel was directed to investigate the following: the child care lease agreement; if any vendors who admitted "bribing" two former County Commissioners to obtain county work were still doing business with the county; and, if any of those vendors were contributing to the current County Commissioners' campaigns. After the Chair's motion passed unanimously he directed counsel to perform a "very thorough investigation" consisting of "more than research." He further directed counsel to turn the information developed over to law enforcement if the Commissioners concluded that probable cause existed to show possible criminal activity. R.R. at 375a-379a.

Counsel on November 26, 2013 executed a one page agreement with James F. Seidel of Seidel Investigations and Consulting, Inc. (Seidel) by which

Seidel was retained "to perform a limited review (performance audit) of Lackawanna County's financial and operating activities . . . to identify areas of County government that if changed, may reduce costs or streamline County government." R.R. at 155a. The investigation was referenced at the Commission's December 5, 2013 and January 8, 2014 meetings. R.R. at 403a, 461a-464a.

At the January 15, 2014 hearing the Chair announced that Seidel had been retained to conduct an investigation into contracts at the county recycling center, the Wilkes Barre/Scranton International Airport, the Stadium Authority and the Pennsylvania Northeast Regional Railroad Authority as well as "[w]hat's going on at the [county] Prison." The Chair further stated that Seidel's findings would be turned over to the public. The Secretary echoed that statement. R.R. at 839a-842a.

The Commission on February 17, 2014 issued and adopted unanimously its final Report and Recommendations for an Executive-Council Optional Plan of County Government. The 21 page, single-spaced report made no reference to Seidel or to the investigation. The only mention in the report was in the listing of resources used and expended by the Commission which referenced the $10,000 retainer paid to Seidel on November 26, 2013. R.R. 504a-813a.

Seidel reported the results of the investigation (Report) to the Commission on May 6, 2014, 78 days after the Commission adopted its report. R.R. at 157a-158a. He conducted approximately 50 interviews with various persons who provided some degree of information about the county government but his Report does not identify any of those interviewed. In addition Seidel compiled and provided to the Commission four binders of supporting materials. R.R. at 255a, 1306a-2690a.

3

Seidel in his Report stated that he "performed a limited review" and in so doing identified issues that "should be subjected to a more comprehensive review and, in certain instances, investigation regardless of the form of government selected by County taxpayers." R.R. at 1192a. Aside from that, his Report's sole reference to the form of government existing or potentially available in Lackawanna County is a statement that "County government regardless of its form will face the enormous task of improving profitability through a combination of revenue increases and expense reduction while dealing with a burdensome level of long-term debt." R.R. at 1220a. In sum, Seidel looked at the county's lease agreement at the Visitors Center, the six vendors who admitted making illegal payments to former County Commissioners and their contributions made to current Commissioners' campaigns. He also looked at existing contracts and activities at the county's recycling center, the Stadium Authority, the prison and the airport. His Report contains no analysis of the different forms of government available or how another form of government would be more efficient or accountable than the existing three commissioner form. R.R. at 1192a-1220a.

With regard to the airport, Seidel stated that several stakeholders identified "concerns" as to the activities of airport employees including: missing parking garage money; payments made to airport employees for use of airport facilities; vendor sponsored employee personnel [sic] trips and home remodeling; employees performed landscaping at an airport official's home; contractor payment to an airport employee; installation of excess carpeting at an employee's residence; personnel [sic] use of airport vehicles; and, removal of gas and supplies for personnel [sic] use. R.R. at 1214a. He further stated that he believed that "the

4

statements rise to a level necessitating an independent investigation by an outside law-enforcement agency." R.R. at 1215a.

Following the Commission's receipt of Seidel's Report, on May 15, 2014 the Commission Chair, Secretary, Counsel and Seidel met with Times' representatives to discuss the public release of the Report. R.R. at 1000a-1002a, 1025a-1026a. The Chair and Seidel advised the Times that the Commission would provide a copy of Seidel's Report but would not disclose the identities of the stakeholders he interviewed. R.R. at 1008a, 1014a, 1023a. The Commission provided the Times with the four binders of supporting materials but five paragraphs regarding the airport were redacted. Seidel also redacted the names of individuals who sent him three emails. R.R. at 1005a-1006a, 1011a.

On May 20, 2014, the Commission held its final public meeting, and the electorate voted on the referendum on the Commission's recommendation for adopting an Executive-Council Optional Plan of County Government. The meeting focus was the public disclosure of Seidel's Report, and a resolution authorizing him to send his findings to law enforcement authorities and to provide the Times a copy after redaction of the stakeholder references. The transcript contains a dialogue among the Chair, Secretary and Counsel noting that the stakeholder names are public but will not be made so due to the referral to authorities and because Seidel promised them anonymity. R.R. at 491a-499a. The Commission's referendum question was not approved by voters. Common Pleas' Opinion at 16.

On June 4, 2014 the Times submitted a RTKL request to the Commission seeking an unredacted copy of Seidel's Report including the names of stakeholders not identified in his Report and the names redacted from the emails included in his Report. R.R. at 290a, 1011a. Commission Counsel responded to

5

the Times' RTKL request on June 6, 2014, and advised that the Commission turned over all of its records to the county in accord with the HRCOPL. Counsel further advised that neither the Commission nor Counsel received an unredacted copy of Seidel's Report and that they did not know the stakeholders' identities. Finally Counsel advised the Times that Seidel did not provide the unredacted records to the Commission because confidential sources and audit work papers are exempt from disclosure under the exemption for noncriminal investigative records found at RTKL Section 708(b)(17)(iii) and (v), 65 P.S. § 67.708(b)(17)(iii) and (v), pertaining specifically to confidential sources (iii) and audit work papers (v). The Commission denied the Times' RTKL request on that basis. R.R. at 292a-293a. Also on June 6, the Lackawanna County Solicitor by letter to Commission Counsel advised that the HRCOPL does not provide authority to the Commission to redact and withhold records and demanded that the Commission provide the County with the unredacted and verified copy of the Seidel Report as required by HRCOPL Section 2921(d), 53 Pa. C.S. § 2921(d). R.R. at 297a-298a.

On June 12, 2014[2] the Times appealed the Commission's denial to the OOR. The Times challenged the denial on three grounds: (1) the Commission has a duty to obtain the report as a public record and to produce it on request; (2) the Commission lacked legislatively granted investigative powers to conduct a

_____

[2] By letter to Seidel dated June 12, 2014 the Lackawanna County Solicitor relayed the County's formal demand for an unredacted copy of Seidel's Report. The Solicitor advised Seidel that as he was acting on the Commission's behalf he was required to provide his materials to the County under HRCOPL Section 2921(d). R.R. at 302a-303a. Seidel retained counsel who advised the County that the HRCOPL and the RTKL did not apply to Seidel as he is neither a public official nor a public employee. Seidel's counsel also asserted that the records demanded were exempt from disclosure under the RTKL. R.R. at 305a-306a.

6

noncriminal investigation; and, (3) Seidel's investigative materials are not exempt from disclosure under the RTKL. R.R. at 295a.

OOR directed the Commission to notify third parties of their ability to participate in the Times' appeal per RTKL Section 1101(c), 65 P.S. § 67.1101(c). The County was granted leave to participate. Seidel did not seek leave to do so. R.R. at 340a-342a. The Commission defended the appeal by relying on the exemptions in Section 708(b)(17)(iii) and (v) regarding records of a noncriminal investigation. R.R. at 313a-316a.

OOR on July 10, 2014 granted the Times' appeal and directed the Commission to provide an unredacted copy of Seidel's Report. R.R. at 210a-219a, 339a-348a. OOR found that the Commission was required to provide access to any records within its actual or constructive possession or control. As the Commission asserted that it had never received the unredacted Report, OOR held that the Commission could not meet its burden of proof to show the redacted information is exempt. *Id.* The Commission on August 8, 2014 filed a Petition for Review of OOR's Determination with common pleas as provided by RTKL Section 1302, 65 P.S. § 67.1302. Seidel and the County were granted leave to intervene. R.R. at 1a.

The Commission contended that it possessed clear statutory authority under the HRCOPL to conduct a noncriminal investigation to advance its study of the existing county government and to support the recommendations in its report. The Commission also suggested that Seidel obtained information from stakeholders on the basis of confidentiality and that the information was instrumental in allowing the Commission to make its recommendations within the prescribed time, and noted that Seidel's Report also was forwarded to law

7

enforcement authorities due to the stakeholders identifying possible criminal acts[3]. Finally, the Commission relied on the previously identified exemptions in RTKL Section 708(b)(17)(iii) and (v). R.R. at 229a-242a.

Seidel advised common pleas that the reference to a redacted Report was inaccurate because he authored one Report that did not identify those whom he interviewed. Seidel further relied on the same arguments based on the HRCOPL and RTKL made by the Commission. R.R. at 252a-261a.

The Times asserted that the Commission lacked any legislatively granted power to conduct a noncriminal investigation or a performance audit. It additionally noted that since Seidel's Report was submitted after the Commission's adoption of its own report, Seidel's Report served no legitimate purpose regarding the Commission's recommendation to the electorate. Finally, the Times argued that Seidel had no authority to promise confidentially on the Commission's behalf and failed to identify any basis for his alleged authority. R.R. at 262a-277a.

The County asserted that it had an affirmative duty under the HRCOPL to receive and possess all Commission records and reports. The County also argued that as the Commission admitted that investigative materials in Seidel's control are Commission records under RTKL Section 506(b)(1), 65 P.S. § 67.506(b)(1), the full version of the Seidel Report and any stakeholder identities are public records subject to disclosure under the RTKL. R.R. at 278a-288a.

---

[3] Given this representation, common pleas served orders on the United States Attorney for the Middle District of Pennsylvania and the Lackawanna County District Attorney inviting amicus briefs on the discoverability of the Seidel Report. The U.S. Attorney's Office advised common pleas that it had "no interest" in the discoverability of Seidel's Report and declined to file an amicus brief. The Lackawanna County District Attorney did not file a brief or any other submission in this regard. Common Pleas' Opinion at 21.

Common pleas held an evidentiary hearing on October 16, 2014. Seidel testified that he promised the stakeholders confidentiality. He stated that their identities are not in any written materials he produced and that he never disclosed their names to anyone. He also testified that he destroyed any interview notes. R.R. at 1063a-1093a. As to the redacted names on the emails sent to him and included in his Report, Seidel testified that his computer "went bad" in April 2014 and that as a result of the repairs performed the original emails are "gone forever." R.R. at 1081a-1082a. Seidel confirmed that he provided his Report and materials to the FBI but did not provide the names of those he interviewed. He stated that he contacted the FBI to discuss the RTKL issue and was advised that the FBI did not object to the release of any unredacted work papers. R.R. at 1099a.

The Commission's Chair and Secretary testified that no Commission member knew the identities of the stakeholders. They also testified that the Commission did not consider or rely on Seidel's Report or his investigation when it adopted its report on February 17, 2014. R.R. at 1100a-1101a, 1108a, 1122a-1123a, 1147a-1148a.

As to Seidel's emails, the court retained a technical advisor to furnish an expert opinion on their potential recovery. That expert provided a report in which he concluded that the emails could be recovered. Common Pleas' Opinion at 23-26. On October 31, 2014 the Commission and Seidel provided the Times with the redacted five paragraphs regarding the airport in exchange for the Times' agreement not to amend its pleadings to seek recovery of counsel fees based on Seidel's late disclosure of the destruction of his notes containing the stakeholders' identities. Common Pleas' Opinion at 26. Given the production of the redacted material regarding the airport and Seidel's testimony regarding the destruction of

9

his notes, the sole remaining issue before common pleas was the redaction of the names on the three emails.

Common pleas by Order dated November 14, 2014 denied the Commission's Petition for Review and affirmed OOR's Final Determination directing the production of unredacted versions of the three emails. Common pleas concluded that the Commission lacked any statutory authority to conduct the investigation. As the investigation was not part of the Commission's legislatively granted powers common pleas held that Seidel's Report and supporting materials are not records exempt under the RTKL. Common Pleas' Opinion 30-42.

Common pleas directed Seidel to obtain from his internet provider unredacted copies of the emails within 30 days. In the event that Seidel's provider was unable to recover the emails common pleas stated that it would consider ordering delivery of Seidel's computer to a forensic analyst or drive recovery specialist to retrieve the unredacted emails. Common Pleas' Opinion at 44. The Commission filed this appeal.[4]

The Commission argues that the HRCOPL provides it with authority to undertake a noncriminal investigation of the current county government through a third party investigator. It notes that the HRCOPL is silent as to how a study of a municipal government may be conducted and that the current county government's lack of cooperation with the Commission forced the Commission's hand. The Commission relies upon a handbook published by the Department of Community and Economic Development to bolster its statutory argument.

---

[4] The active parties before this court are the Commission and the Times. Seidel filed a notice of non-participation on February 27, 2015. Lackawanna County on April 24, 2015 advised that it would join the Times' brief.

10

Under RTKL Section 102, 65 P.S. § 67.102, an agency is required to provide any citizen access to any "public record" that is not (a) exempt from disclosure under RTKL Section 708 or any other federal or state law or regulation or judicial order or decree, or (b) protected by some privilege. The term record includes any "document, paper . . . tape . . . or . . . information stored or maintained electronically and a data-processed or image-processed document." *Id.*

The Commission asserts that the material sought by the Times is exempt from disclosure by RTKL Section 708(b)(17) which provides that the RTKL does not require production of:

> (17) A record of an agency relating to a noncriminal investigation, including:
> * * *
> (ii) Investigative materials, notes, correspondence and reports.
> (iii) A record that includes the identity of a confidential source, including individuals subject to the act of December 12, 1986 (Pl. 1559, No. 169) known as the Whistleblower Law.
> * * *
> (v) Work papers underlying an audit.

65 P.S. § 67.708(b)(17)(ii),(iii) and (v).

As the agency bears the burden of proving that a record is exempt from public access, the Commission must establish the applicability of the noncriminal investigation exemption by a preponderance of the evidence. 65 P.S. § 67.708(a)(1); *Pa. State Police v. McGill*, 83 A.3d 476, 479 (Pa. Cmwlth. 2014). Preponderance is such proof as leads the fact finder to find that the existence of a contested fact is more probable than its nonexistence. *Pa. State Troopers Ass'n v. Scolforo*, 18 A.3d 435, 439 (Pa. Cmwlth. 2011). Exemptions from disclosure must

11

be narrowly construed due to the RTKL's remedial nature. *Hous. Auth. of the City of Pittsburgh v. Van Orsdol*, 40 A.3d 209, 215 (Pa. Cmwlth. 2012).

Thus, to establish the applicability of any one of the three above exemptions, the Commission must demonstrate that the records sought relate to a noncriminal investigation.  In *Department of Health v. Office of Open Records*, 4 A.3d 803, 810 (Pa. Cmwlth. 2010), this court held that "the word 'noncriminal' in Section 708(b)(17) is intended to signal that the exemption is applicable to investigations other than those which are criminal in nature." The court construed "investigation" in Section 708(b)(17) to be "a systematic or searching inquiry, a detailed exanimation, or an official probe." *Id*. at 810-811.

However, for the Commission to assert successfully the noncriminal investigation exemption, it must as a threshold matter have authority to conduct the investigation at issue. *Compare Dep't of Pub. Welfare v. Chawaga*, 91 A.3d 257, 259 (Pa. Cmwlth. 2014) (noncriminal investigation exemption did not preclude disclosure of DPW performance audit report as "DPW's performance audit was not part of the DPW's legislatively granted fact-finding or investigative powers."), *and Coulter v. Dep't of Pub. Welfare*, 65 A.3d 1085, 1089-1090 (Pa. Cmwlth. 2013) (records pertaining to DPW's official probe of county children and youth services are within noncriminal investigation exemption as DPW possessed statutory and regulatory authority to investigate children and youth social service agencies, and its investigation was carried out pursuant "to DPW's duty to investigate complaints to determine whether an agency is compliant with applicable laws and its power to compel acceptable plans of correction.").

Agencies are creatures of statute and possess only the authority to act in accord with their official duties as established by their enabling acts. *Sherry v.*

*Radnor Twp. Sch. Dist.*, 20 A.3d 515, 523 (Pa. Cmwlth. 2011). *See also Dep't of Health*, 4 A.3d at 814 ("In order for an agency to conduct any type of investigation, the investigation would necessarily be a part of the agency's official duties."); *Johnson v. Pa. Convention Center Auth.*, 49 A.3d 920, 925 (Pa. Cmwlth. 2012) (noncriminal investigation exception is "applied to preclude disclosure of materials related to noncriminal investigations conducted by an agency acting within its legislatively-granted fact-finding and investigative powers").

The HRCOPL provides the boundaries for any government study commission. Section 2918 titled "Function and duty of commission" provides that

> [t]he government study commission shall study the form of government of the municipality to compare it with other available forms under the laws of this Commonwealth and determine whether or not in its judgment the government could be strengthened or made more clearly responsible or accountable to the people or whether its operation could become more economical or efficient under a changed form of government.

53 Pa. C.S. § 2918. HRCOPL Sections 2921 and 2923, 53 Pa. C.S. §§ 2921 and 2923, provide that the "government study commission shall report and recommend" that either (a) the form of government remain unchanged, or (b) a referendum question be submitted to the electors to adopt "a home rule charter" or "one of the optional plans of government authorized" by the HRCOPL.

The authority granted to government study commissions under the HRCOPL has been construed narrowly. In *Schrier v. Kisselback*, 879 A.2d 834 (Pa. Cmwlth. 2005), the township government study commission recommended the adoption of an optional plan form of government in which council members would be limited to two consecutive terms of office. *Id.* at 836. The recommendation was adopted by the electorate and the subsequent candidacies of

13

incumbent council members were challenged based upon the recommended implementation of term limits. The trial court relied on *Kline v. City of Harrisburg*, 68 A.2d 182 (Pa. 1949), which held that "municipalities are not sovereign entities, and their powers are limited to 'those that are granted in express words, necessarily or fairly implied in or incident to the powers expressly granted, or essential to the declared objects and purposes of the municipality and not merely convenient but indispensable,'" to conclude that the term limitations were invalid as the relevant statutes, including the HRCOPL, "contain no express authorization for term limits and grant no other express power from which authority could be inferred to establish term limits." *Schrier*, 879 A.2d at 837. On appeal, this court adopted the trial court's opinion and agreed with the court's conclusion "that the [government study] Commission had no statutory authority to recommend the establishment of term limits in the optional plan and, therefore, the voters in the Township could not have adopted such limits." *Id.* at 838.

In this case, the Commission's counsel was directed to investigate the following: the county's lease agreement at the Visitors Center; whether any vendors who admitted "bribing" two former County Commissioners to obtain county work were still doing business with the county; and, whether any of those vendors were contributing to the current County Commissioners' campaigns. After the Chair's motion passed unanimously he directed counsel to perform a "very thorough investigation" consisting of "more than research." He further directed counsel to turn the information developed over to law enforcement if the Commissioners concluded that probable cause existed to show possible criminal activity. Later, the Commission Chair announced that Seidel had been retained by the Commission to conduct an investigation into county contracts in place at the

county recycling center, the airport, the Stadium Authority and the Pennsylvania Northeast Regional Railroad Authority as well as "[w]hat's going on at the [county] Prison." R.R. at 375a-379a, 839a-842a.

There is nothing in the HRCOPL that would vest the Commission with authority to undertake an investigation of these issues. Based upon the clear language of the HRCOPL the Commission's official duties were confined to a study of the County's existing home rule charter form of government, comparison of that government with other optional forms of government, and a determination if another available form of government would make the county government more responsible, accountable, economical or efficient. There is nothing in Seidel's Report that suggests anything about these questions or demonstrates how the subject of his report is related to them.

The same can be said about the three emails that are the remaining subject of this appeal. As described by common pleas, the email dated February 4, 2014 references the sender's meeting with Seidel on that date, and forwards "the link to the 'ambush' interview of [Commissioner] Corey O'Brien" that later was discussed in Seidel's report and appended as an exhibit. The email of February 5, 2014 questions the veracity of Commissioner O'Brien's remarks during that interview and the accuracy of the campaign contribution information that was identified by the WNEP-TV reporter. The third email dated April 25, 2014, discusses the tax assessment reduction for a Dunmore property that is leased as office space for the County Coroner.[5] Common Pleas' Opinion at 37. None of the

---

[5] The February 4 and 5, 2014 emails are in the Reproduced Record at pages 2198a and 2197a, respectively. The April 25, 2014 email is at page 2659a. Our review confirms the county court's description of their contents.

15

emails concern the form of Lackawanna County government or how a different form of government would avoid those issues or otherwise be more accountable or efficient. As such, it is difficult to see how Seidel's investigation was part of the Commission's official duties as required by *Coulter* and by *Department of Health*. It is thus difficult to see how Seidel's investigative materials are shielded from public access based upon the noncriminal investigation exemption in the RTKL.

Characterizing the investigation as a performance audit does not change this result. The Generally Accepted Government Auditing Standards (GAGAS) define "performance audits" as audits that "provide objective analysis to assist management and those charged with governance and oversight in using the information to improve program performance and operations, reduce costs, facilitate decision making by parties with responsibility to oversee or initiate corrective action, and contribute to public accountability." *Chawaga*, 91 A.3d at 259 n.6. *Chawaga* also requires that the entity conducting the performance audit possess the authority to do so in order for the audit/investigation to fall within the RTKL's noncriminal investigation exception. *Id.* at 259. In that case the performance audit was not part of the agency's legislatively granted fact-finding or investigative powers; rather, the audit was ancillary to its public assistance services. *Id.* Thus, even if Seidel's investigation is called a performance audit, it is not exempt under RTKL Section 708(b)(17) as it was not part of the Commission's legislatively granted powers.

The Commission suggests that we should look to the handbook Home Rule in Pennsylvania (8th ed. 2013) published by the Department of Community

and Economic Development[6] for additional support that the Seidel investigation was within the scope of the Commission's official duties. A close reading of the handbook leads to the opposite conclusion as it cautions against examining "**trivial matters relating only to a narrow scope of activity**" and "**making recommendations with no direct opportunity for implementation**." Handbook at 12 (emphasis in original). Moreover, there is no need to consult the handbook to determine the reach of a commission under the HRCOPL.  Section 2918 is clear as to the powers and duties of a commission.  There is no ambiguity. Aids to statutory construction including administrative interpretations are appropriate only where ambiguity exists. *Friends of Pa. Leadership Charter Sch. v. Chester County Bd. of Assessment*, 101 A.3d 66, 73 (Pa. 2014).

Finally, the entire basis of the HRCOPL is that a commission will produce a report for public consumption, and will not examine matters irrelevant to its focus.  The report is meant to be a public document to provide advice to the electorate regarding their form of government. HRCOPL Section 2921(d) provides that upon discharge of a commission all records of the commission shall be turned over to the municipal clerk for safekeeping and shall be available for public inspection. Based upon the foregoing, we have no difficulty concluding that the

---

[6] The handbook is attached to common pleas' "Supplemental Opinion Pursuant to Pa. R.A.P. 1925(a)." Common pleas issued that Opinion on April 2, 2015 in response to the Commission's Concise Statement of Errors Complained of on Appeal. The Commission moved to strike the Supplemental Opinion on April 17, 2015 complaining that it already had filed its principal brief in this court. On May 7, the Commission filed a Reply Brief in which it addressed the Supplemental Opinion. By Order dated May 8, 2015 this court denied the Commission's motion but allowed the filing of a supplemental brief on or before June 8, 2015. The Docket reflects that the Commission advised on June 4 that it did not intend to file a supplemental brief. Common pleas' Supplemental Opinion is not in the Reproduced Record as it was issued after the record was designated and filed. It is part of the certified record received from common pleas.

17

records compiled by Seidel are public records subject to disclosure under the RTKL. Accordingly, we affirm.

_____

**BONNIE BRIGANCE LEADBETTER,**
Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lackawanna County Government : 
Study Commission, : 
　　　　　　　　Appellant : 
　　　　　　　　　　 : 
　　　　　v. : No. 1938 C.D. 2014
　　　　　　　　　　 : 
The Scranton Times, L.P. d/b/a The : 
Times Tribune : 

# **O R D E R**

AND NOW, this 20th day of November, 2015, the order of the Court of Common Pleas of Lackawanna County is affirmed.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge