# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

L.P. Group 2, Inc.,             :

                Appellant     :

                                   :

           v.                  :    No. 1411 C.D. 2015

                                   :    Argued: May 12, 2016

Philadelphia Labor Standards Unit    :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE DAN PELLEGRINI, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**            **FILED:**      **August 22, 2016**

L.P. Group 2, Inc., (LPG) appeals from the June 29, 2015 Order of the Court of Common Pleas of Philadelphia County (common pleas) that denied LPG's appeal from the decision of the Board of Labor Standards of the City of Philadelphia (Board). The Board denied LPG's appeal from, and sustained citations issued by, the City of Philadelphia Labor Standards Unit (Unit) for LPG's alleged failure to pay prevailing wage[1] and other related violations on seven demolition contracts. LPG raises four issues on appeal: (1) whether the adjudication of the Board is void for lack of authority and subject matter

---

[1] "Prevailing wage" is an hourly base pay plus fringe benefit rate for each listed classification. (N.T. 8/14/13 at 165, R.R. at 179a.) Workers on a contract subject to prevailing wage must receive the base pay, and employers may pay either the listed fringe benefit amount directly to the employee or into a fringe benefit plan. (N.T. 8/22/13 at 28, R.R. at 231a.)

jurisdiction; (2) whether common pleas erred by upholding the Board's adjudication; (3) whether the Board's adjudication is based on improperly adduced facts and reflects a capricious disregard of competent evidence of record; and (4) whether the Board's findings of fact are supported by substantial evidence. After review, we conclude that five of the seven demolition contracts did not meet the $200,000 threshold necessary to fall within the ambit of "city-work" set by the Philadelphia Code (Code). As a result, the alleged failure to pay prevailing wage on those contracts was not within the general class of matters cognizable by the Unit or on appeal to the Board. Both bodies thus lacked jurisdiction to consider the violations alleged. We, therefore, reverse common pleas as to those five contracts. The remaining two contracts met the $200,000 threshold and fall within the ambit of "city-work," so the alleged failure to pay prevailing wage on those contracts falls within the Unit's and the Board's jurisdiction. We affirm common pleas as to those two contracts.

The Demolition Contracts and the Neighborhood Transformation Initiative (NTI)[2]

Between 2004 and 2006, the City of Philadelphia (City) as part of its NTI awarded to LPG a total of seven contracts for demolition services at various sites across the City. The seven contracts, including the locations of the work, amounts and date awarded, are as follows:

Chester Ave. Area - $89,505.86 (Contract No. 04-0564) (awarded 05/24/2004);
Salford & Beaumont Area - $138,042.00 (Contract No. 04-0559) (awarded 05/24/2004);

_____

[2] NTI was an urban renewal program intended to redevelop blighted neighborhoods across the City. (N.T. 8/14/13 at 110-12, R.R. at 124a-26a.)

2

Lindenwood Area - $165,962.43 (Contract No. 04-0565) (awarded 05/25/2004);

Peach & Ruby Area - $109,690.00 (Contract No. 04-0563) (awarded 05/25/2004);

49th & Saybrook Area - $146,531.00 (Contract No. 05-0290) (awarded 10/27/2004);

Allegheny West Area - $929,194.80 (Contract No. 05-0308) (awarded 11/24/2004);

Haddington B Area - $1,574,568.25 (Contract No. 06-0263) (awarded 01/06/2006).

(N.T. 11/7/13 at 117-23, R.R. at 439a-40a; Contract Award Letters, S.R.R. at 184b-87b.)

Five of the seven contracts were for less than $200,000. Those five contracts were awarded as part of a "Small Demolition Bid Package Program" (Small Bid Program). This program featured smaller contracts for 5 to 10 demolitions designed toward small and minority businesses. (N.T. 8/14/13 at 71, 111-13, R.R. at 85a, 125a-27a; Small Bid Program flyer (Flyer), S.R.R. at 42b.) The Small Bid contracts had insurance and payment bond requirements that were less than the regular NTI demolition contracts, and a maximum contract value of $500,000, so many did not meet the $200,000 "city-work" threshold set by the Code as the minimum amount that required payment of prevailing wage. (N.T. 8/14/13 at 111-13, R.R. at 125a-27a.) The Flyer announcing the Small Bid Program stated that "standard NTI Provisions will still apply, including prevailing wage requirements," and identical terms were included in each of the contracts, even though five were for less than $200,000. (N.T. 8/14/13 at 72-73, 100-01, R.R. at 86a-87a, 114a-15a; Flyer, S.R.R. at 42b.)

Proceedings Before the Unit

On September 8, 2005, the Unit issued LPG a Citation Notice for failing to pay prevailing wage and required fringe benefits, and related offenses on the Allegheny West, Saybrook and Lindenwood contracts. (R.R. at 517a-18a; S.R.R. at 177b-78b.) LPG allegedly owed $181,857.34 for these violations based on the Unit's audit. (Id.)

LPG sought a hearing before the Unit regarding the September 8, 2005 Citation Notice. The hearing was held on October 27, 2005. The presiding officer for the Unit suggested that LPG was "not fully prepared to defen[d] itself . . . against the citation letters of September 8th" and further advised LPG that several additional current and former LPG employees from three additional contract sites (Salford & Beaumont, Chester Avenue and Peach & Ruby) came forward subsequent to the September 8, 2005 Citation Notice with claims that they were not paid prevailing wage. (N.T. 10/27/05 at 3-4, 22, S.R.R. at 194b-95b, 213b.) The Unit provided LPG with notice of these additional alleged violations by means of a spreadsheet "made part of the record" and requested that LPG provide certified payroll and other records to challenge the new allegations. (N.T. 10/27/05 at 4, 30, 34, S.R.R. at 195b, 221b, 225b.)

The Unit requested these submissions in 10 days, but LPG's request that it have 60 days was granted such that the additional materials were due on or before January 3, 2006. (N.T. 10/27/05 at 4, 28-30, 3, 42, S.R.R. at 195b, 219b-21b, 233b.) The Unit advised that it would set another hearing date upon receipt and review of the additional materials. (Id.) LPG's counsel asked the Unit questions about the basis for the violations. (N.T. 10/27/05 at 4-29, S.R.R. at 195b-220b.)

4

In addition to this dialogue, counsel for LPG argued that the Saybrook and Lindenwood contracts were exempt from the prevailing wage requirements because the contract amounts were below the threshold for "city-work," and because they were part of an "appropriate job training program."[3] (N.T. 10/27/05 at 31, S.R.R. at 222b.) LPG's counsel stated that LPG would submit documentation to the Unit to challenge the violations and argument on LPG's legal issues. (N.T. 10/27/05 at 12, 31-33, S.R.R. at 203b, 222b-24b.)

LPG did not submit the additional materials by the January 3, 2006 date established at the hearing. On January 10, 2006, the Unit sustained all of the violations charged to LPG for the original contracts identified in the September 8, 2005 citation as well as the three additional contracts identified at the October 27, 2005 hearing. (S.R.R. at 44b-45b.) LPG appealed the Unit's January 10, 2006 determination to the Board on January 20, 2006. (LPG's 1/20/06 Notice of Appeal; R.R. at 520a-21a.) On December 21, 2006, the Unit issued a Citation Notice to LPG alleging the failure to pay prevailing wage for the seventh contract site (Haddington B). (S.R.R. at 47b-48b.) Based upon a further dialogue between

---

[3] Section 17-107(2)(b)(.2) of the Code provides that:

(2) *Contracts.*

* * *

[(b)](.2) A bonafide member of a job training program may be paid less than the prevailing wage if said training program's primary purpose is to provide construction training opportunities and that the said training program has been approved by the City, a City Agency, or City-related Agency, and provided that the size of the construction project does not exceed 8 housing units.

Phila. Code § 17-107(2)(b)(.2).

LPG and the Unit this Citation was amended twice and eventually also was appealed to the Board. (N.T. 8/22/13 at 24, R.R. at 227a; Amended Citation Notices, S.R.R. at 50b, 52b.)

Hearing before the Board

The Board held a de novo evidentiary hearing which spanned four days, August 14, 2013, August 22, 2013, October 21, 2013, and November 7, 2013, and which generated a 2,000 page hearing record. The Unit presented six witnesses: (1) Ronald Payne; (2) Vernon Ray (aka Vernon Haskins, aka Lamont Haskins); (3) Kevin Thompson, all former LPG employees who worked under the contracts; (4) then-Philadelphia Procurement Commissioner, Hugh Ortman; (5) Ben Lewitt, from Hill International, a consultant that managed the City's NTI contracts; and (6) James Ferraro, then-Deputy Director of the Unit. (N.T. 8/14/13 at 21, 37, 44, 60-61, 65-66, 109-10, 161, R.R. at 35a, 51a, 58a, 74a-75a, 79a-80a, 123a-24a, 175a.) LPG presented four witnesses: (1) Curtis Fowlkes, a former LPG supervisor; (2) Anthony Rutledge, LPG's insurance broker; (3) Jay McCalla, a former City Deputy Managing Director who supervised the NTI program; and (4) Garnett Littlepage, an LPG officer. (N.T. 10/21/13 at 9, 53, 57, 102, R.R. at 378a, 389a-90a, 401a; N.T. 11/7/13 at 51, R.R. at 422a.)

While the Unit focused on the contract process and the terms of the contracts, LPG focused on Code Section 17-107(6)(b), which defines the Unit's powers and duties, and argued that the Board lacked the authority to hear LPG's appeal because LPG requested but never received a due process hearing from the Unit. LPG further argued that its defenses to the original citation, that the contracts were not for "city-work" and that they were part of an "appropriate job

6

training program," had never been addressed. (N.T. 8/14/13 at 10-13, R.R. at 24a-27a.)

LPG argued that the Board is vested with authority to conduct a de novo review of the record upon which the action appealed from was taken only after the Unit makes a record and renders a valid determination that an appellant violated Code Section 17-107, relying on Code Sections 17-107(7)(b)(.1), (.3) and (.4), which delineate the Board's authority over actions of the Unit. In other words, LPG contended that a due process hearing by the Unit finding a violation of Code Section 17-107 is a procedural prerequisite to the Board's power to consider an appeal, and that the October 27, 2005 proceeding and the subsequent January 10, 2006 determination did not meet that standard.

The Board denied LPG's appeal on November 7, 2013. In so doing the Board sustained all the prevailing wage violations issued by the Unit on all seven contracts. Specifically, the Board found that LPG was liable to its employees for $291,227.66 and that LPG intentionally committed the violations, and the Board authorized the Unit to make restitution to the employees from the funds withheld on the contracts. (11/7/13 Board Order, R.R. at 3a; N.T. 11/7/13 at 246-49, R.R. at 471a-72a.) The Board issued its findings of fact and conclusions of law on April 7, 2014. (R.R. at 4a-14a.) Therein, the Board concluded that it had authority to hear LPG's appeal and held that LPG had both a contractual duty and a statutory duty to pay its employees the prevailing wage on the seven contracts (addressing LPG's city-work issue). (Board Findings of Fact and Conclusions of Law ¶¶ 33-35.) The

Board also rejected LPG's argument that the training exemption applied to its work under the contracts.[4] (Id. ¶¶ 36-37.)

As to its authority to hear LPG's appeal, the Board made the following conclusions of law:

**The Board may decide this controversy**

33. The requirement of Code Section 17-107(7)(b)(.1) that the Board may not hear an appeal until "after the completion and determination of the due process hearing by the Labor Standards Unit" was satisfied. The Unit's letter of January 10, 2006, upholding its prior violation notice, completed and determined the Unit's due process hearing. See Ex. City-13.

34. Furthermore, Appellant agreed that "[t]he Contract is subject to Section 17-107 of the Philadelphia Code . . . and all regulations and procedures adopted thereunder." See Ex. LP-2 at ¶ 102. Appeal to the Board is a procedure for review of the determination of the Unit under Section 17-107.

35. Furthermore, Appellant's voluntary decision to appeal this matter to the Board waived any argument it might have had as to the authority of the Board to hear an appeal.

(Board Findings of Fact and Conclusions of Law ¶¶ 33-35.)

With regard to LPG's argument that the contracts did not constitute "city-work" as defined in Code Section 17-107(1)(b), the Board determined LPG's liability on two independent bases: (1) by contract, LPG agreed to pay prevailing wage, (Board Findings of Fact and Conclusions of Law ¶¶ 6-12, 42-43); and, alternatively (2) Section 17-107 required it to do so, as, aggregated together, the

---

[4] Although common pleas addressed LPG's arguments in this regard, LPG does not reference the training exemption either in its principal brief or its reply brief filed with this Court. Accordingly, we do not address that issue here.

8

contracts exceeded $200,000, and thus were city-work as defined by Code Section 17-107(1)(b), (Board Findings of Fact and Conclusions of Law ¶¶ 38-41).

Common Pleas' Decision

LPG appealed to common pleas. Common pleas decided LPG's appeal based on the record made before the Board and did not take additional evidence. The parties engaged in extensive motion practice and filed briefs arguing their various positions. LPG requested that common pleas hear the appeal de novo on the basis that the Board improperly excluded evidence regarding the training program exemption. The Unit opposed a de novo hearing, and common pleas heard argument on this issue and on the merits of LPG's appeal. Common pleas denied LPG's appeal by the Order dated June 29, 2015. (R.R. at 605a.) LPG appealed to this Court,[5] and common pleas directed LPG to file a Concise Statement of Errors Complained of on Appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1925(b).[6, 7]

---

[5] Our review of a local agency appeal where common pleas takes no additional evidence is limited to determining if constitutional rights were violated, if an error of law was committed, or if "the necessary factual findings are supported by substantial evidence." Society Hill Civic Ass'n v. Phila. Bd. of License & Inspection Review, 905 A.2d 579, 587 (Pa. Cmwlth. 2006); Section 754 of the Local Agency Law, 2 Pa. C.S. § 754.

[6] Rule 1925(b) provides:

* * *

**(b) Direction to file statement of errors complained of on appeal; instructions to the appellant and the trial court.--**If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

Pa. R.A.P. 1925(b).

Common pleas issued its Opinion in support of its June 29, 2015 Order on November 6, 2015. Common pleas held that the Board had subject matter jurisdiction and authority to hear LPG's appeal and that LPG agreed to pay prevailing wage by virtue of the terms of the contracts.

Arguments before this Court

Because it is dispositive as to five of the seven contracts at issue, we first address LPG's argument that common pleas erred because the term "city-work" is defined in Code Section 17-107(1)(b) as non-professional service contracts for compensation in excess of $200,000. For this reason, LPG argues that the Board's consideration and determination of the City's breach of contract claims were not within the subject matter jurisdiction given to the Unit, and consequently to the

---

[7] LPG filed its Statement and identified, in relevant part, the following errors in "general terms":

1. The trial court erred by applying an incorrect standard of review;

2. The trial court erred as a matter of law by upholding the [Board's] November 7, 2013 adjudication which denied the appeal and sustained the citations issued by the [Unit];

3. LPG's constitutional right to receive a due process hearing to challenge the [Unit's] September 8, 2005 Citation Notice was violated by the [Unit's] investigation, prosecution, and adjudication of LPG's alleged violations of Philadelphia Code Section 17-107 by a biased agency;

4. The [Board's] November 7, 2013 adjudication is void as the [Board] lacked authority and subject matter jurisdiction to hear the appeal;

5. The [Board] violated LPG's constitutional rights to be heard, to examine witnesses, and elicit evidence in support of its governmental estoppel defense before an unbiased tribunal;

6. The November 7, 2013 adjudication is not in accordance with law, as the [Board's] findings of fact reflect a conscious disregard of competent evidence;

7. The [Board] abused its discretion as the necessary findings are not supported by substantial evidence.

(Statement, R.R. at 612a.)

Board, under the Code. The Unit argues in response that common pleas correctly found that the terms of the contracts required LPG to pay prevailing wage notwithstanding that the contracts were for less than $200,000.

We first review the relevant Code provisions. Section 17-107(1)(f) defines "Contractor" as "[a]ny employer who has been awarded a contract for City-work." Phila. Code § 17-107(1)(f). "City-Work" is defined in Section 17-107(1)(b) to include "non-professional service contracts with the City for compensation that exceeds two hundred thousand dollars ($200,000) . . . ." Phila. Code § 17-107(1)(b). Section 17-107(1)(h) defines "Non-professional Service Contracts" as "[c]ontracts for the provision of the following non-professional services only: . . . demolition . . . ." Phila. Code § 17-107(1)(h). Section 17-107(2)(b) provides that "[e]very City-work contract shall contain a provision that all employees performing city-work other than . . . job trainees . . . shall be paid at least the applicable prevailing wages . . . ." Phila. Code § 17-107(2)(b).

The Unit's powers and duties are set forth in Section 17-107(6)(b) as follows:

(6) The Unit shall have the responsibility of administering this Section and in connection therewith shall:

* * *

(b) Receive and refer to the Commissioner under whose supervision a City-work contract is being performed, complaints against any contractor or subcontractor for alleged violations of this Section or the provisions of the City-work contract required hereby. Thereafter, the Director shall investigate such complaints and in connection therewith or with respect to any investigation shall have full power and authority to subpoena any witness, books, records, or other data of any person for the purposes of obtaining information pertinent to such investigation. The Director shall make a finding in writing with

11

respect to each complaint filed, and shall send a copy thereof to the complainant and the contractor and shall maintain it on file. Upon request, the unit shall provide any affected contractor or subcontractor with a hearing, pursuant to subsection 8(e).

Phila. Code § 17-107(6)(b).

The Board's powers and duties are found in Code Section 17-107(7), which provides, in pertinent part:

(7) *Board of Labor Standards.* There is hereby created a Board to be known as the Board of Labor Standards.

* * *

(b) The Board shall serve as an appeal body to review the findings made under subsection (6)(b) of this Section or any other violation found by the Director.

(.1) No appeal shall be considered unless after the completion and determination of the due process hearing by the Labor Standards Unit the appeal is filed in writing with the Board within ten (10) days of the date that the findings or violation notice was sent to the parties.

* * *

(.3) The Director and, if applicable, the operating department overseeing the contract, upon a notice of appeal, shall transmit to the Board all the papers constituting the record upon which the action appealed from was taken.

(.4) In the exercise of its powers, the Board may reverse, affirm or modify the finding, order, or determination appealed from.

Phila. Code § 17-107(7)(b)(.1), (.3) and (.4).

Thus, Section 17-107(6)(b) provides that the Unit "shall have the responsibility of administering this Section and in connection therewith shall" . . . "[r]eceive and refer to the Commissioner under whose supervision **a City-work**

12

**contract** is being performed, complaints against any contractor or subcontractor for alleged violations of this Section or the provisions of **the City-work contract** . . . .” Phila. Code § 17-107(6)(b) (emphasis added). As such, the Code specifically limits the Unit’s jurisdiction to alleged violations of “city-work” contracts. Nevertheless, the Unit argues that LPG, by entering into the contracts, agreed to be subject to the prevailing wage requirements and that the contracts would be treated as “city-work” contracts regardless of whether the contract amount met the $200,000 threshold.

Agencies such as the Unit are products of their enabling legislation, and their authority to act is constrained by the bounds of that legislation. See, e.g., Dep’t of Health v. Office of Open Records, 4 A.3d 803, 814 (Pa. Cmwlth. 2010) (holding that in order for agency to assert non-criminal investigative exemption in response to a Right-to-Know Law request, the asserted “investigation must necessarily be a part of the agency’s official duties”); Mazza v. Dep’t of Transp., Bureau of Driver Licensing, 692 A.2d 251, 252 (Pa. Cmwlth. 1997) (stating that “[a]n administrative agency is creature of statute and cannot exercise powers that are not explicitly given to it by the legislature.”). Perhaps recognizing the plain language of the Code, the Unit argues that the parties by agreement vested jurisdiction in the Unit notwithstanding the provisions of the Unit’s enabling ordinance that limits its jurisdiction to “city-work” contracts.

However, this is not the law. See Mercury Trucking, Inc. v. Pa. Pub. Util. Comm’n, 55 A.3d 1056, 1066 (Pa. 2012) (“A party, or the parties by agreement, may not vest subject matter jurisdiction in a court which does not have it otherwise.”). See also Witney v. City of Lebanon, 85 A.2d 106, 108 (Pa. 1952) (stating “that the test of jurisdiction [is the court’s competency] to determine

13

controversies of *the general class* to which the case presented . . . belong[s],-- whether the court had power to *enter upon the inquiry*, not whether it might ultimately decide that it was unable to grant the relief sought *in the particular case.*") (emphasis in original); Earl Realty, Inc. v. Conestoga Valley Sch. Dist., 403 A.2d 232, 233 (Pa. Cmwlth. 1979) (stating same).

Department of Health instructs that agencies are required to act within the bounds of their enabling legislation. That principal, combined with Mercury, Witney, and Earl Realty, instructs that a tribunal (such as the Unit and the Board here) must have authority to consider a particular class of matter initially, and that the parties may not by agreement bestow upon the tribunal that which the enabling legislation does not confer. As such, under the plain language of Code Section 17-107(6)(b), the Unit's jurisdiction is limited to contracts for "city-work," which is defined, in pertinent part, as those non-professional service contracts with values exceeding $200,000. As five of the seven contracts did not meet this threshold, the Unit was without jurisdiction to consider complaints alleging that LPG violated the Code or those contracts. Moreover, as the Board under Code Section 17-107(7) serves as an appeal body to review the findings of the Unit, the Board's review as to the five contracts that were not for "city-work" was a nullity. Accordingly, we reverse common pleas as to those five contracts.

However, the remaining two contracts, Allegheny West and Haddington B, both met the dollar threshold for "city-work," and, therefore, the Unit and the Board had jurisdiction to review whether LPG violated the Code with regard to those contracts. We proceed to review LPG's remaining arguments in that context.

LPG argues that the Code is the only source of power given to the Board to review the findings made under Section 17-107(6)(b), or any other violation found

by the Unit. Thus, the Board had no authority to hear and consider LPG's appeal, where LPG requested but never received the due process hearing which *the Unit* is required to provide. More specifically, LPG argues that the Board had no authority to hear, consider, and determine the contractual prevailing wage claims because *such claims were not part of any finding made by the Unit* under Code Section 17-107(6)(b). LPG thus urges that common pleas erred as a matter of law when it upheld the Board's conclusion that the Board had jurisdiction because there is no evidence showing that the Unit's determination, dated January 10, 2006, satisfied the requirement of Code Section 17-107(7)(b)(.1).

The Board's jurisdiction over appeals from the Unit is found in Code Section 17-107(7)(b). LPG contends that the Board lacked subject matter jurisdiction because Code Section 17-107(7)(b)(.1) provides, in pertinent part, that "[n]o appeal shall be considered unless after the completion and determination of the due process hearing by the . . . Unit the appeal is filed in writing with the Board within ten (10) days of the date that the findings or violation notice was sent to the parties." Phila. Code § 17-107(7)(b)(.1). However, the record establishes that LPG requested a hearing before the Unit and that a hearing was convened on October 27, 2005, as LPG was entitled.[8] The record further shows that at the October 27, 2005 hearing, LPG presented argument, asked questions, sought clarification of the documentation sought by the Unit, and raised legal defenses. Although new claims were raised before the Board, which the Unit did not hear, the administrative appeal to the Board was de novo, and LPG received there an

---

[8] The Code at Section 17-107(6)(b) provides that "[u]pon request, the [U]nit shall provide any affected contractor . . . with a hearing . . . ." Phila. Code § 17-107(6)(b). Code Section 17-107(8)(e) states that "the contractor . . . may make a written request for a hearing from the Unit." Phila. Code § 17-107(8)(e).

15

evidentiary hearing with the full panoply of due process protections. This subsequent de novo hearing and determination by the Board did not violate due process and complied with the Code. See, e.g., Allegheny Ludlum Steel Corp. v. Pa. Pub. Util. Comm'n, 459 A.2d 1218, 1220-22 (Pa. 1983) (holding that the automatic energy cost rate adjustment provision in Public Utility Code that provides for adjustments to reflect utility's fuel cost increases without opportunity for opponents of increase to be heard prior to the increase does not violate procedural due process. The Public Utility Code affords procedural due process safeguards "through a subsequent, year-end, automatic proceeding for final determination and adjustment of rate increases, allowing full participation by all interested parties"). Common pleas thus properly determined that the Board had jurisdiction[9] to hear LPG's appeal.[10]

LPG next argues that the Board capriciously disregarded the unambiguous text of the Code, and that it disregarded testimony by the Unit's Deputy Director that cast doubt on his reasons for not rescheduling the due process hearing that LPG contends the Unit was mandated to give under the Code. In addition, LPG points to testimony by the Unit's Deputy Director that the Unit addresses only prevailing wage issues, and not breach of contract issues.

---

[9] To the extent that LPG argues that a due process hearing before the Unit is a jurisdictional prerequisite to the Board's authority to hear LPG's appeal, based on the facts in this case, the Board in its Findings of Facts and Conclusions of Law ¶ 33, and common pleas, (Op. at 18), properly determined that the Unit's January 10, 2006 determination that followed the October 27, 2005 hearing and the 60-day period for LPG to submit additional documentation, completed the Unit's due process hearing, and vested jurisdiction in the Board.

[10] The Unit argues that LPG failed to preserve with sufficient particularity the due process issue either before the Board or in its Statement. (Unit's Br. at 25-26 n.5.) However, we need not make that determination as we have concluded that the record enables us to provide adequate appellate review on that issue.

Common pleas held that there was substantial evidence to support the Board's findings of prevailing wage violations[11] on these contracts and LPG does not contest these conclusions. LPG was therefore required to pay prevailing wage on the two contracts that met the threshold for "city-work," Allegheny West and Haddington B, and it did not do so.

For these reasons, common pleas June 29, 2015 Order is reversed as to the five contracts that did not meet the Code threshold for "city-work," and affirmed as to the remaining two contracts.

_____
**RENÉE COHN JUBELIRER,** Judge

---

[11] Common pleas found that:

Evidence and testimony was introduced to show that Appellant was aware of the prevailing wage requirement; that it did not pay its employees a prevailing wage; that it falsified payroll records and improperly classified employees; that Appellant double-reported employees; that it did not provide fringe benefits; that Appellant advised its employees not to cooperate with the Unit and threatened to fire them if they did; and that Appellant did in fact fire employees who spoke to the Unit. See N.T. 8/14/13 at 13-15, 22-29, 30-33, 39-40, 41-43, 46-49, 52-53, 57-59, 62, 66-68, 71-73, 88, 90, 97, 99-101, 107, 112-116, 123-124, 129, 162, 166-171, 175, 178-80, 183-85; N.T. 8/22/13 at 31, 88, 117-19, 147. Thus, it was the Board as factfinders' [sic] job to examine evidence and witness testimony and make credibility determinations. Appellant has not shown any error in the Board's decisions. Following an examination of the voluminous record, exhibits, and testimony, this court cannot conclude that the findings of fact were not supported by substantial evidence.

(Op. at 16.)

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

L.P. Group 2, Inc.,                          :
                         Appellant     :
                                    :

            v.                           :   No. 1411 C.D. 2015
                                      :

Philadelphia Labor Standards Unit       :

## O R D E R

**NOW**, August 22, 2016, the June 29, 2015 Order of the Court of Common Pleas of Philadelphia County is hereby **REVERSED** as to the five contracts that did not meet the monetary threshold for city-work, as defined in Section 17-107(b)(2) of the Philadelphia Code, and **AFFIRMED** as to the remaining two contracts.

 

                                              _____

                                              **RENÉE COHN JUBELIRER,** Judge